# MARY RAMBO v. CHICAGO, GREAT WESTERN RAILROAD COMPANY.[1]

November 1, 1935.

No. 30,480.

Stearns, Stone & Mackey, for appellant.

H. E. Stassen, Elmer J. Ryan, and Charles P. Stone, for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff recovered for the death of her husband by defendant's wrongful act. It moved for judgment non obstante, but not for a new trial. It appeals from the judgment.

Plaintiff's decedent, Roy C. Rambo, had for many years been in the employ of defendant as a signal maintainer of its tracks, and

[1]Reported in 263 N. W. 112.

for some time prior to and up to the moment of his death had charge of defendant's track from Empire to Dennison, residing at Randolph, north of Dennison. He used a gasolene speeder in his work. He was run down three and a half miles south of Hampton by defendant's passenger train that passed Hampton at 5:05 p. m. December 8, 1933. He was seen leaving Hampton going south at about 4:45 p. m. The train was running at a speed of 60 miles an hour. It was a dark, cloudy evening. The sun set at 4:30 o'clock. The ground was bare. The engineer testified that as he was watching the straight track he discovered something moving thereon when at a distance therefrom of from seven to nine coach lengths. A coach length is 50 feet. He took it to be a couple of dogs. When he came within five or six coach lengths of the moving object he saw that it was a man on a speeder, and at once applied the emergency brakes and sounded the whistle repeatedly. There was a downgrade of eight-tenths of a foot per 100 feet at the place, and the train ran some 2,300 feet beyond the point where it struck and crushed the speeder before it could be stopped. Where Rambo was overtaken, and for some distance both to the north and south, the track is on an embankment or fill. The train was late. It left St. Paul seven minutes late, and at Rich Valley, 16 miles out of St. Paul, it struck a truck at a highway crossing, killing two men. In that accident it lost the pilot of the locomotive and caused a delay of 40 or 45 minutes. The pilot was not replaced. The operation of the locomotive without a pilot was one of the acts of negligence alleged in the complaint. It was conceded that the train was engaged in interstate transportation and that Rambo was so employed at the time of the fatal accident.

Of the several acts of negligence pleaded the trial court ruled that the proof warranted the submission of one only, the alleged failure to equip the locomotive with a headlight of the illuminating power required by the federal law, which law, as declared by the federal courts, must govern this case, for both employer and employe were engaged in interstate commerce at the time of the fatality. The statutes referred to are generally known as the federal employers liability act, 45 USCA, c. 2, §§ 51-59, and the boiler inspection act

as amended June 7, 1924, 45 USCA, c. 1, §§ 22-34. Section 23 reads:

"It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, * * *."

Under the provisions of the last named act the following rule (No. 129) pertaining to headlights on locomotives was in force in December, 1933:

"Each locomotive used in road service between sunset and sunrise shall have a headlight which shall afford sufficient illumination to enable a person in the cab of such locomotive who possesses the usual visual capacity required of locomotive enginemen, to see in a clear atmosphere, a dark object as large as a man of average size standing erect at a distance of at least 800 feet ahead and in front of such headlight; and such headlight must be maintained in good condition."

Since there was no motion for new trial, the assignments of error reach only the question whether there is any substantial evidence in support of the judgment. As stated, the sole act of negligence upon which the jury could base a recovery, under the charge of the court, was a violation of the quoted rule as to headlight; and, if defendant was negligent in that respect, is there sufficient evidence that the deficient headlight was the proximate cause of Rambo's death? The quantum of proof must measure up to the rule clearly and adequately stated in Baltimore & O. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. ed. 419, with marginal citation of prior decisions of the court. It is true that there is direct proof that the headlight was inspected at the time the locomotive was attached to the train in Minneapolis and when it arrived at its destination at Oelwein, Iowa, and that it then satisfied the requirement of rule 129; also that it was burning brightly when the train passed Hampton and shortly after the accident, when the

chief electrician of defendant, who happened to be on the train, having walked to the front thereof when the emergency stop was made, ascertained, and so testified at the trial, that the track ahead was illuminated properly for more than 800 feet. But this notwithstanding, we think there are facts testified to which authorized the jury in finding that the headlight did not comply with the standard fixed under the boiler inspection act. Most persuasive of this is the testimony of the engineer himself, who testified that he was watching the straight track ahead but could see no object thereon until he was within 500 feet of what he took to be a couple of dogs, and not until he came 100 or more feet nearer could he make out that it was a man on a speeder. There is no suggestion that the engineer did not have the visual capacity required of locomotive engineers. The fact that Rambo was seen to make no move to leave the speeder indicates that the headlight did not cast its rays sufficiently around where he was so as to give warning of the approach of the train. There is evidence to show that a person on a running speeder can quickly and without great danger swing himself clear of the rails. Then there is the testimony of a 15-year old lad, who lived adjacent to the track where Rambo was run down and who witnessed the accident, that while he heard a speeder coming he could not see it until the train which he heard and saw approaching came within about 100 feet of the speeder, when the headlight disclosed its presence to him, and that when he heard the blasts of the whistle and saw the sparks from the application of the brakes the locomotive was less than 50 feet from the speeder. It is thought that the testimony of the engineer that the illumination of the headlight was so deficient that he could not ascertain what the object ahead of him on the track was until he was within 300 feet thereof, corroborated by the fact that the rays of light were not sufficient to arouse the attention of Rambo to the presence of the locomotive, and the testimony of the lad who witnessed the accident standing a few rods from the track, that he, although knowing that both train and speeder were approaching, could not see the speeder until the headlight was within 100

feet thereof, justify the jury in finding that the headlight did not comply with the requirements of the boiler inspection act.

We do not doubt that if the headlight violated that act the evidence warranted the jury in concluding that such violation or negligence caused or contributed to cause Rambo's death. A case in point on the proposition that the violation of the regulation as to headlight might be the proximate cause of an employe's death is Chesapeake & O. Ry. Co. v. Wood (C. C. A.) 59 F. (2d) 1017. The headlight of a locomotive in the nighttime is not only to disclose obstructions on the track that might imperil the train, but also to give warning to employes and others of the approach of the train. It is readily seen that if the engineer had clearly seen Rambo when he was 800 feet or more away he might have been able so to reduce the speed that it would have been slower than that of the speeder and thus avoided contact or that decedent could have swung himself clear from the rails. It is also well known that a bright light coming up behind one traveling in the dark warns such a one of the approach of the carrier of the light. The jury could therefore have concluded that had the headlight complied with the law Rambo would have thereby been warned of his danger in time to escape; hence, that the violation of the law, or defendant's negligence in that respect, was a proximate or contributing cause of Rambo's death.

Defendant insists that Rambo's negligence in not carrying lanterns on the speeder as its rules require, which rules in printed form Rambo had, and also in failing to ascertain from the agent at Hampton before he left for Randolph whether the track would be free from trains, was the proximate cause of his death. The court charged the jury that if Rambo's negligence was the sole cause of his death the verdict should be for defendant. Evidently the jury found that his negligence was not the sole cause, and it could not well have been so found if the evidence warranted a finding that a defective headlight was a proximate or contributing cause. 45 USCA, §§ 7 and 53, provide that contributory negligence and assumption of risk do not afford defenses in actions for wrongful death where the carrier's violation of any statute enacted for the

safety of the employe contributed to the death. "Rambo was not in the act of violating any order or direction of the employer respecting the headlight of this train, and, in traveling on the speeder after dark without lanterns lit thereon, was violating no federal statute. So cases like G. N. Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. ed. 732, have no application, as stated in Union Pac. R. Co. v. Hadley, 246 U. S. 330, 38 S. Ct. 318, 62 L. ed. 751.

We conclude that defendant was not entitled to a directed verdict and should not have judgment notwithstanding.

The judgment is affirmed.

HOLT, JUSTICE (dissenting).

For the reason that the evidence seems conclusive that the headlight complied with the federal boiler inspection act, I am unable to concur in the foregoing opinion.

STONE, JUSTICE, took no part in the consideration or decision of this case.