CHICAGO GREAT WESTERN RAILROAD CO. *v.*
RAMBO, ADMINISTRATRIX.

No. 696.   Argued April 1, 1936.—Decided April 27, 1936.

*Mr. Harry S. Stearns,* with whom *Messrs. Ralph A. Stone* and *Walter H. Jacobs* were on the brief, for petitioner.

*Mr. Harold E. Stassen,* with whom *Mr. Elmer J. Ryan* was on the brief, for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Half an hour after sunset (5:10), December 8, 1933, respondent's intestate, a signal maintainer, while riding his gasoline speeder over the rails, was run down and killed three miles south of Hampton, Minnesota, by petitioner's passenger train from Minneapolis, moving down grade sixty miles per hour. Darkness had come; the weather was cloudy; the train late; an hour earlier it had collided with a truck and killed a man.

Relying upon the Federal Employers' Liability Act, 45 U. S. C., c. 2, §§ 51–59, and the Boiler Inspection Act as

amended June 7, 1924, 45 U. S. C., c. 1, §§ 22–34, respondent sued for damages in Dakota County District Court. The jury found for her; judgment upon the verdict was affirmed by the Supreme Court. · 195 Minn. 331; 263 N. W. 112.

Several acts of negligence were alleged, but the trial court submitted only one to the jury: Failure to equip the locomotive with a headlight of the illuminating power required by federal law.

Section 23 of the Boiler Inspection Act is in the margin.[1]

Under permission of that Act, the Interstate Commerce Commission adopted the following rule:—

"129. Each locomotive used in road service between sunset and sunrise shall have a headlight which shall afford sufficient illumination to enable a person in the cab of such locomotive who possesses the usual visual capacity required of locomotive enginemen to see in a clear atmosphere, a dark object as large as a man of average size standing erect at a distance of at least 800 feet ahead and in front of such headlight; and such headlight must be maintained in good condition."

The Supreme Court declared:—"Since there was no motion for new trial, the assignments of error reach only the question whether there is any substantial evidence in support of the judgment. As stated, the sole act of negligence upon which the jury could base a recovery,

---

[1] "Sec. 23. It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 28, 29, 30, and 32 and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

under the charge of the court, was a violation of the quoted rule as to headlight; and, if defendant was negligent in that respect, is there sufficient evidence that the deficient headlight was the proximate cause of Rambo's death? The quantum of proof must measure up to the rule clearly and adequately stated in *Baltimore & Ohio R. Co. v. Groeger,* 266 U. S. 521." It held the evidence adequate.

In cases like this, we must examine the record and determine for ourselves whether as matter of law there is enough to sustain a finding of negligence. *Chicago, M. & St. P. R. Co.* v. *Coogan,* 271 U. S. 472, 474; *Atchison, T. & S. F. Ry. Co.* v. *Saxon,* 284 U. S. 458, 459.

The following excerpt from its opinion indicates the view of the Supreme Court.

"It is true that there is direct proof that the headlight was inspected at the time the locomotive was attached to the train in Minneapolis and when it arrived at its destination at Oelwein, Iowa, and that it then satisfied the requirement of rule 129; also, that it was burning brightly when the train passed Hampton and shortly after the accident when the chief electrician of defendant, who happened to be on the train, having walked to the front thereof when the emergency stop was made, ascertained, and so testified at the trial, that the track ahead was illuminated properly for more than 800 feet. But this notwithstanding, we think there are facts testified to which authorized the jury in finding that the headlight did not comply with the standard fixed under the Federal Boiler Inspection Act. Most persuasive of this is the testimony of the engineer himself, who testified that he was watching the straight track ahead but could see no object thereon until he was within 500 feet of what he took to be a couple of dogs, and not until he came 100 or more feet nearer could he make out that it was a man on a speeder. There is no suggestion that the engineer did not have the visual

capacity required of locomotive engineers. The fact that Rambo was seen to make no move to leave the speeder indicates that the headlight did not cast its rays sufficiently around where he was so as to give warning of the approach of the train. There is evidence to show that a person on a running speeder can quickly and without great danger swing himself clear of the rails. Then there is the testimony of a 15 year old lad, who lived adjacent to the track where Rambo was run down and who witnessed the accident, that while he heard a speeder coming he could not see it until the train which he heard and saw approaching came within about 100 feet of the speeder, when the headlight disclosed its presence to him, and that, when he heard the blasts of the whistle and saw the sparks from the application of the brakes, the locomotive was less than 50 feet from the speeder. It is thought that the testimony of the engineer that the illumination of the headlight was so deficient that he could not ascertain what the object ahead of him on the track was until he was within 300 feet thereof, corroborated by the fact that the rays of light were not sufficient to arouse the attention of Rambo to the presence of the locomotive, and the testimony of the lad, who witnessed the accident standing a few rods from the track, that he, although knowing that both train and speeder were approaching, could not see the speeder until the headlight was within 100 feet thereof, justify the jury in finding that the headlight did not comply with the requirements of the Federal Boiler Inspection Act."

This apprizement of the evidence, we think, is not well founded. Properly interpreted, the record fails to establish that the headlight fell below the prescribed standard. The argument for respondent dwells too hard on conjecture. *Atchison, T. & S. F. Ry. Co.* v. *Saxon, supra*, 460.

The most important bit of evidence was given by the engineer, called as a witness for respondent. In substance it follows. "I saw something down on the track, at first when I noticed it, I thought it was a dog or two running down the track, when I got a little closer, I discovered it was a speeder, and I pulled the whistle. I gave a number of short blasts and the man on the speeder never turned or looked." "It [the object] might have been eight or nine [railroad] car lengths, eight, probably seven." A car length is around fifty feet. "I was watching ahead to see what it was, and I discovered it was a speeder." I discovered it was a speeder about five or six car lengths ahead. Immediately, "I put the brake in the emergency." I was looking ahead at all times after I rounded the curve until I hit the speeder traveling in the same direction. While I observed him, the man on the speeder "did not turn at all."

Treating the foregoing as a positive statement of observed facts, counsel argue that the headlight must have failed to illumine the track 800 feet ahead; otherwise, it is said the engineer would have seen the speeder at that distance and applied the brakes earlier. Also that, if warned by the light when 800 feet away, the decedent would have made visible effort to leave the speeder and thus escape. The presence of conjecture is plain enough. Simply because the engineer failed to see some object 800 feet ahead, does not show that he *could* not have seen so far; his attention might have been directed to points nearer to him or momentarily diverted. How far ahead he was looking does not appear. Nor can it be said that, since the deceased was not seen to change position on the speeder, he received no warning.

Further, the engineer's statements must be considered in connection with the circumstances attending the accident and other portions of his testimony. The train was

104

moving 88 feet per second in the dark and under clouds. In a writing signed two days after the accident, he affirmed, "I first saw some object on the track in the glare of the headlight when the engine was 10 to 12 coach lengths away. It may have been a little less than 1,000 feet or could have been a little more. I saw no light on the object and when first seen it appeared to be two dogs running down the track. I pinched up on the brakes making a service application and when the engine was within 6 to 8 coach lengths I could make out for the first time that it was a motor car and a man on it going same way we were. I immediately continued the brake application into emergency, opened the sanders and started sounding a series of short blasts of whistle. I could make out a man on the car with his back to us, his coat collar turned up and looking ahead. I expected every second to see him make some effort to get off the car but so far as I could see he never changed his position until struck."

While on the stand (May, 1934), he said that the emergency brakes were applied "five or six car lengths" from the speeder. "It might have been more, it might have been less, it might have been a little more." Also that the "seven, eight or nine car lengths" was merely a guess. "It might have been eight, nine, or ten car lengths, it might have been a thousand feet or more, or it might have been a little bit less." Evidently, his statements were merely guesses; under the circumstances, accurate estimate of distances by him was impossible.

The 15 year old lad was in his father's yard 600 feet from the track, engaged in the exacting business of catching half grown chickens in the dark. In substance, he said:— "I heard a train coming." Next, "I noticed the train coming down the track." "Then I heard the speeder." By the light of the train, I saw the speeder in front. "When the train came closer, he whistled." When he got

still closer, a rod away, I saw fire from the brakes. When I heard the speeder and heard the train, I looked away from the track towards some cornstalks to see if there was a chicken there. "When I looked back, then I saw it." Could not see man on speeder very plain and could not say whether he moved before being hit. Saw train "about a hundred feet or so" before it struck speeder, headlight beaming, man sitting down on speeder.

Nothing in all this gives substantial support to the notion that the headlight failed to illuminate the track 800 feet ahead, or was below the required standard. Other portions of the evidence stressed for respondent are no more helpful to her position.

The challenged judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

Mr. Justice Brandeis took no part in the consideration or decision of this cause.