Zimmerman, J.
The injury complained of occurred on the sleety, wet and sloppy early morning of March 28,1953. On the evening of the previous day, plaintiff had been summoned by defendant to serve as a member of a “wreck train crew” to assist in retracking two derailed boxcars which had left the tracks of the Nickel Plate Bailroad at the Northern Ohio Pood Terminal near East 39th Street and Broadway Avenue in the city of Cleveland. One of the cars was retracked by the use of a derrick and four outriggers, two at either end of the derailed car. The outriggers were supported from beneath by wooden blocks of varying sizes. After the first car had been successfully retracked, it became necessary to move the equipment to repeat the operation as to the other car. It was during this moving operation that plaintiff was hurt. He claims that as he was attempting to lift an outrigger support block out of the mud with his right foot on an elevated crosstie the block “all at once it jump out of the mud and I slipped on the crosstie that T was standing next to, a tie — I couldn’t get no good grip, I was so close to it. So when I slipped on the cross-tie, that is when I got that catch in my back.” No one else witnessed this incident, and plaintiff was the only one to testify directly concerning it.
Although later on plaintiff varied his account somewhat as to just when he slipped in relation to lifting the wooden outrigger support, he adhered fairly closely to the account of the happening as contained in the testimony quoted above.
Plaintiff’s principal claim of negligence against defendant is that it failed to afford him a reasonably safe place to work, (1) because of the elevated crosstie on which he slipped — it ex *584 tended some five inches above the roadbed — and (2) because this crosstie had grease on it, which was responsible for plaintiff’s slipping and the resultant injury to his back.
The only evidence in support of plaintiff’s contention that there was grease on the crosstie is his testimony that after the injury he observed grease on his right shoe. During plaintiff’s cross-examination, the following questions were asked and answered :
“Q. Well, did you slip? You slipped on a tie? A. That’s right.
“Q. Is that the reason you hurt your back? A. That is the way I got hurt when I slipped, and the mud was sloppy and the mud was on my feet.
“Q. Grease, too? A. Grease is under the mud.
“Q. Grease under the mud? A. Yes.
“Q. You never looked at it? A. I look at it after I got the block out; I was lay flat on my back.
“Q. You said you never looked at the tie? A. How could I look on the block if it was turned? There was grease and mud on my shoe.
“Q. There was grease on the block? A. Grease under the mud because it was on the right side of my feet, under the shoe.
“Q. How much grease was there? A. I don’t know how much grease there was. There was enough for me to tell you.
“Q. You didn’t see any grease on that tie? A. There was mud.
“Q. There was mud all around there if it was raining as hard as you say it was. A. It was raining and sleet and sloppy. a * # *
“Q. You can see mud on the tie, too? A. There was grease on the tie.
“Q. How do you know? A. It was on my foot.
‘ ‘ Q. Does that mean it was on the tie ? A. There was mud on the tie.
“Q. You could have picked it up any place? A. Well, I don’t know.
“Q. You don’t know. You didn’t know if it was on that tie? A. It was on the tie.
“Q. You didn’t see that tie? A. It was on the mud.
*585 “Q. Did you see it? A. It was over my shoe, that is the way I saw it was on there.
“Q. You saw it on your shoe. Does that mean it was on the tie? A. By my picking the tie up, it could have come from the tie, from the one I slip and fell upon.
“Q. It could have come from any place around there, couldn’t it? A. Well, it could have, but it was there on the tie.
“Q. But you say you didn’t see it on the tie? A. It was on my shoe.
“Q. My question is: Then it could have come from any place around where you were walking that night? A. Well, I could say that, too, but it was on my shoe.
“Q. That is the only thing you are sure of? A. That’s right. ’ ’
At the request of defendant, the following interrogatories were submitted to and answered by the jury:
“I. Was the defendant negligent?
“Answer: Yes.
“II. If your answer to number I is ‘Yes,’ state of what that negligence consisted.
“In that the tie of the track he was required to walk was elevated a substantial distance above the ground level and was covered with grease or oil, thereby affording unstable footing.”
In any case brought in a state court, where the Federal Employers’ Liability Act applies, the substantive law as laid down by the federal courts and particularly the Supreme Court of the United States is controlling. It would hardly be practical and we think it is unnecessary to cite and comment on many of those cases. However, in perusing them, certain principles of law are discernible, and the important ones may be summarized as follows:
1. The Federal Employers’ Liability Act does not make the employer an insurer of his employees’ safety when such employees are rendering services for him. The basis of liability is negligence, which is not shown by the mere fact that an injury occurs. Ellis v. Union Pacific Rd. Co., 329 U. S., 649, 91 L. Ed., 572, 67 S. Ct., 598.
2. Under the act, the weight of the evidence must be more than a scintilla before the case may properly be submitted to a *586 jury for determination. Brady, Admx., v. Southern Ry. Co., 320 U. S., 476, 88 L. Ed., 239, 64 S. Ct., 232.
3. Evidence which raises only a speculation or a conjecture of negligence on the part of a defendant-employer is not sufficient to support a verdict imposing liability on him. The burden of proof rests upon the plaintiff, and there must be enough evidence to show negligence and that such negligence was a proximate cause of the injury. Atchison, Topeka & Sante Fe Ry. Co. v. Toops, Admx., 281 U. S., 351, 74 L. Ed., 896, 50 S. Ct., 281; Atchison, Topeka & Santa Fe Ry. Co. v. Saxon, Admr., 284 U. S., 458, 76 L. Ed., 397, 52 S. Ct., 229; Chicago Great Western Rd. Co. v. Rambo, Admx., 298 U. S., 99, 80 L. Ed., 1066, 56 8. Ct., 693; Moore, Admx., v. Chesapeake & Ohio Ry. Co., 340 U. S., 573, 95 L. Ed., 547, 71 S. Ct., 428. See, also, Bevan v. New York, Chicago & St. Louis Rd. Co., 132 Ohio St., 245, 6 N. E. (2d), 982 (certiorari denied, 301 U. S., 695, 81 L. Ed., 1351, 57 S. Ct., 924), and the cases decided by the Supreme Court of the United States cited therein.
Wé are aware that the Supreme Court of the United States in recent years has been liberal, to say the least, in upholding the recovery of damages by injured employees in actions brought under the Federal Employers’ Liability Act. However, by applying the principles of law above outlined, which we will assume have not been abandoned, to the instant action, we are of the opinion that plaintiff herein failed to make out a case of liability against the defendant, and that the findings of the jury with respect to negligence in response to the interrogatories submitted to it are not substantiated by the evidence.
The rule prevailing in Ohio and elsewhere is that, where, in a negligence action, an interrogatory is submitted to the jury, in which the jury is asked to specify what acts of negligence, if any, are chargeable to the defendant, only those acts specified by the jury in its answer should be considered, and it will be accepted that other claimed acts of negligence on the part of the defendant were found by the jury not to have been established. Masters v. New York Central Rd. Co., 147 Ohio St., 293, 70 N. E. (2d), 898 (certiorari denied, 331 U. S., 836, 91 L. Ed., 1848, 67 S. Ct., 1519; rehearing denied, 332 U. S., 786, 92 L. Ed., 369, 68 S. Ct., 33).
*587 Surely the defendant can hardly be held to the duty of going over the premises of another railroad with a fine tooth comb to discover every imperfection thereon before sending its employees there to do a job for which they have been trained and'where they might expect to meet conditions to be found in the operation of railroads generally.
To us it appears that plaintiff encountered an ordinary risk in the course of his accustomed employment, and that there is insufficient evidence as a matter of law to charge the defendant with responsibility for his misfortune. The position of the crosstie, slightly elevated above the roadbed, was known to plaintiff and is a condition of common occurrence on all railroads. The existence of oil on the crosstie is at best problematical, and, if there was oil present, there was no showing that defendant placed it there, knew about it, or, in the exercise of ordinary care, should have known about it.
Of course plaintiff’s unfortunate accident is to be deplored, but sympathy may not be substituted for the evidence needed to Avin a lawsuit. Occasions do arise under the Federal Employers’ Liability Act where defendants possess rights which should be protected, and we think this is one of them. If in any action, the plaintiff fails to make a case against the defendant by the required amount and character of effidence, the defendant is entitled to prevail by way of a directed verdict or by judgment notwithstanding the verdict.
In our view, defendant should have had a directed verdict in its favor or judgment notwithstanding the verdict, in response to its motions, on the ground that negligence on its part was not sufficiently shown by the evidence to warrant recovery. Accordingly, the judgment of the Court of Appeals is reversed, and final judgment is rendered for defendant.

Judgment reversed.

Weygandt, C. J., Stewart, Taet, Matthias, Bell and Herbert, JJ., concur.