FERGUSON *v.* MOORE-McCORMACK LINES, INC.

No. 59.   Argued December 10, 1956.—Decided February 25, 1957.

*George J. Engelman* argued the cause and filed a brief for petitioner.

*William A. Wilson* argued the cause for respondent. With him on the brief were *Wilbur E. Dow, Jr.* and *Frederick Fish.*

MR. JUSTICE DOUGLAS announced the judgment of the Court and an opinion in which THE CHIEF JUSTICE, MR. JUSTICE CLARK and MR. JUSTICE BRENNAN join.

Petitioner was injured in 1950 while serving as a second baker on respondent's passenger ship *Brazil.* Among his duties, he was required to fill orders of the ship's waiters for ice cream. On the day of the accident, he had received an order from a ship's waiter for 12 portions of ice cream. When he got half way down in the two-and-one-half-gallon ice-cream container from which he was

filling these orders, the ice cream was so hard that it could not be removed with the hemispherical scoop with which he had been furnished. Petitioner undertook to remove the ice cream with a sharp butcher knife kept nearby, grasping the handle and chipping at the hard ice cream. The knife struck a spot in the ice cream which was so hard that his hand slipped down onto the blade of the knife, resulting in the loss of two fingers of his right hand.

Petitioner brought this suit under the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, to recover for his injuries, which were alleged to be the result of respondent's negligence. At the close of petitioner's case, respondent's motion for a directed verdict was denied. Respondent offered no evidence. After the jury returned a verdict of $17,500 for the petitioner, respondent moved to set aside the verdict. This motion was also denied and judgment entered for the petitioner in accordance with the jury verdict. The Court of Appeals reversed, holding that it was "not within the realm of reasonable foreseeability" that petitioner would use the knife to chip the frozen ice cream. 228 F. 2d 891, 892. We granted certiorari. 351 U. S. 936.

We conclude that there was sufficient evidence to take to the jury the question whether respondent was negligent in failing to furnish petitioner with an adequate tool with which to perform his task.

Petitioner testified that the hard ice cream could have been loosened safely with an ice chipper. He had used such an instrument for that purpose on other ships. He was not, however, furnished such an instrument. There was evidence that the scoop with which he had been furnished was totally inadequate to remove ice cream of the consistency of that which he had to serve. And, there was evidence that its extremely hard consistency was produced by the failure of another member of the crew

to transfer it from the deep freeze to a tempering chest in sufficient time to allow all of it to become disposable by means of the scoop when the time came for it to be served. There was no showing that any device was close at hand which would have safely performed the task. Finally, there was evidence that petitioner had been instructed to give the waiters prompt service.

Respondent urges that it was not reasonably foreseeable that petitioner would utilize the knife to loosen the ice cream. But the jury, which plays a pre-eminent role in these Jones Act cases (*Jacob* v. *New York City,* 315 U. S. 752; *Schulz* v. *Pennsylvania R. Co.,* 350 U. S. 523), could conclude that petitioner had been furnished no safe tool to perform his task. It was not necessary that respondent be in a position to foresee the exact chain of circumstances which actually led to the accident. The jury was instructed that it might consider whether respondent could have anticipated that a knife would be used to get out the ice cream. On this record, fair-minded men could conclude that respondent should have foreseen that petitioner might be tempted to use a knife to perform his task with dispatch, since no adequate implement was furnished him. See *Schulz* v. *Pennsylvania R. Co.,* 350 U. S. 523, 526. Since the standard of liability under the Jones Act is that established by Congress under the Federal Employers' Liability Act, what we said in *Rogers* v. *Missouri Pacific R. Co., ante,* p. 500, decided this day, is relevant here:

> "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

Because the jury could have so concluded, the Court of Appeals erred in holding that respondent's motion for a directed verdict should have been granted. "Courts

should not assume that in determining these questions of negligence juries will fall short of a fair performance of their constitutional function." *Wilkerson* v. *McCarthy,* 336 U. S. 53, 62.

*Reversed.*

MR. JUSTICE BURTON concurs in the result.

MR. JUSTICE REED would affirm the judgment of the Court of Appeals.

MR. JUSTICE BLACK took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, dissenting.*

> *"The Federal Employers Liability Act gives to railroad employees a somewhat liberalized right of recovery for injuries on the job. A great number of cases under the Act have been brought to the Supreme Court, many of them cases in which the court of appeals had set aside, on the evidence, verdicts for the employees. Despite the human appeal of these cases, Brandeis never allowed himself to regard them as the proper business of the appellate jurisdiction of the Supreme Court."*
>
> Paul A. Freund, The Liberalism of Justice Brandeis, address at a meeting of the American Historical Association in St. Louis, December 28, 1956.

In so discharging his judicial responsibility, Mr. Justice Brandeis did not disclose an idiosyncrasy in a great judge. His attitude expressed respect for the standards

---

*[NOTE: This dissenting opinion applies also to No. 28, *Rogers* v. *Missouri Pacific R. Co., ante,* p. 500; No. 42, *Webb* v. *Illinois Central R. Co., ante,* p. 512; and No. 46, *Herdman* v. *Pennsylvania R. Co., ante,* p. 518.]

formulated by the Court in carrying out the mandate of Congress regarding this Court's appellate jurisdiction in cases arising under the Federal Employers' Liability Act. For he began his work on the Court [1] just after Congress had passed the Act of September 6, 1916, 39 Stat. 726, relieving the Court of its obligatory jurisdiction over Federal Employers' Liability Act decisions by the highest state courts and the Circuit Courts of Appeals. Mr. Justice Brandeis' general outlook on the formulation by the Supreme Court of the public law appropriate for an evolving society has more and more prevailed; his concept of the role of the Supreme Court in our judicial system, and his consequent regard for the bearing on the judicial product of what business comes to the Court and how the Court deals with it, have often been neglected in the name of "doing justice" in individual cases. To him these were not technicalities, in the derogatory sense, for the conduct of judicial business. He deemed wise decisions on substantive law within the indispensable area of the Court's jurisdiction dependent on a limited volume of business and on a truly deliberative process.

One field of conspicuous disregard of these vital considerations is that large mass of cases under the Federal Employers' Liability Act in which the sole issue is the sufficiency of the evidence for submission to the jury.[2]

---

[1] He formally took his seat on June 5, 1916 (241 U. S. III), but did not begin active participation in the Court's work until the beginning of the October Term, 1916.

[2] Throughout this opinion I have dealt with the issue of granting certiorari in this type of case almost entirely in terms of the Federal Employers' Liability Act because the greatest abuse of the certiorari policy has occurred in that field. The problem is not confined to that Act, however, since the same or similar issues arise under other Acts, such as the Jones Act, 41 Stat. 1007, the Federal Tort Claims Act, 28 U. S. C. §§ 1346 (b), 2671–2680, the Safety Appliance Act, 27 Stat. 531, the Boiler Inspection Act, 45 U. S. C. § 22 *et seq.*, the Suits in Admiralty Act, 46 U. S. C. § 741 *et seq.*, and

For many years, I reluctantly voted on the merits of these negligence cases that had been granted review. In the last ten years, and more particularly within the past few years, as the Court has been granting more and more of these petitions, I have found it increasingly difficult to acquiesce in a practice that I regard as wholly incompatible with the certiorari policy embodied in the 1916 Act, the Judiciary Act of 1925, 43 Stat. 936, and the Rules formulated by the Court to govern certiorari jurisdiction for its own regulation and for the guidance of the bar. I have therefore felt compelled to vote to dismiss petitions for certiorari in such cases as improvidently granted without passing on the merits.[3] In these cases I indicated briefly the reasons why I believed that this Court should not be reviewing decisions in which the sole issue is the sufficiency of the evidence for submission to the jury. In view of the increasing number of these cases that have been brought here for review—this dissent is to four decisions of the Court—and in view of the encouragement thereby given to continuing resort to this Court, I deem it necessary to enlarge upon the considerations that have guided me in the conviction that writs in this class of cases are "improvidently granted."[4]

---

the Lucas Act, 60 Stat. 902 (see *Buffalo Faultless Pants Co.* v. *United States,* 142 F. Supp. 594). Indeed, one of the decisions to which this dissent is written, No. 59, arises under the Jones Act.

[3] *Hill* v. *Atlantic Coast Line R. Co.,* 336 U. S. 911; *Carter* v. *Atlanta & St. A. B. R. Co.,* 338 U. S. 430, 437; *Affolder* v. *New York, C. & St. L. R. Co.,* 339 U. S. 96, 101; *Moore* v. *Chesapeake & O. R. Co.,* 340 U. S. 573, 578; *Anderson* v. *Atlantic Coast Line R. Co.,* 350 U. S. 807. See *McAllister* v. *United States,* 348 U. S. 19, 23 (Suits in Admiralty Act); *Schulz* v. *Pennsylvania R. Co.,* 350 U. S. 523, 527 (Jones Act). See also *Wilkerson* v. *McCarthy,* 336 U. S. 53, 64; *Reynolds* v. *Atlantic Coast Line R. Co.,* 336 U. S. 207, 209; *Stone* v. *New York, C. & St. L. R. Co.,* 344 U. S. 407, 410.

[4] "Improvidently granted" is a term of art simply meaning that on full consideration it becomes manifest that the case is not the

At the outset, however, I should deal briefly with a preliminary problem. It is sometimes said that the "integrity of the certiorari process" as expressed in the "rule of four" (that is, this Court's practice of granting certiorari on the vote of four Justices) requires all the Justices to vote on the merits of a case when four Justices have voted to grant certiorari and no new factor emerges after argument and deliberation. There are two reasons why there can be no such requirement. Last Term, for example, the Court disposed of 1,361 petitions for certiorari. With such a volume of certiorari business, not to mention the remainder of the Court's business, the initial decision to grant a petition for certiorari must necessarily be based on a limited appreciation of the issues in a case, resting as it so largely does on the partisan claims in briefs of counsel. See *Furness, Withy & Co.* v. *Yang-Tsze Ins. Assn.,* 242 U. S. 430, 434; *Southern Power Co.* v. *North Carolina Public Service Co.,* 263 U. S. 508, 509. The Court does not, indeed it cannot and should not try to, give to the initial question of granting or denying a petition the kind of attention that is demanded by a decision on the merits. The assumption that we know no more after hearing and deliberating on a case than after reading the petition for certiorari and the response is inadmissible in theory and not true in fact. Even an FELA case sometimes appears in quite a different light after argument than it appeared on the original papers. Surely this must be acknowledged regarding one of today's cases, No. 46, and see *McCarthy* v. *Bruner,* certiorari granted, 322 U. S. 718, certiorari dismissed, 323 U. S. 673. The course of argument and the briefs on the merits may disclose that a case appearing on the

---

type of case that should have been brought here. The term is the counterpart of the phrase "improvidently taken," as used by Congress in 28 U. S. C. § 2103, governing appeals from state courts that are improvidently taken.

surface to warrant a writ of certiorari does not warrant it, see *Layne & Bowler Corp.* v. *Western Well Works, Inc.*, 261 U. S. 387,[5] or may reveal more clearly that the only thing in controversy is an appraisal of facts on which this Court is being asked to make a second guess, to substitute its assessment of the testimony for that of the court below.

But there is a more basic reason why the "integrity of the certiorari process" does not require me to vote on the merits of these cases. The right of a Justice to dissent from an action of the Court is historic. Of course self-restraint should guide the expression of dissent. But dissent is essential to an effective judiciary in a democratic society, and especially for a tribunal exercising the powers of this Court. Not four, not eight, Justices can require another to decide a case that he regards as not properly before the Court. The failure of a Justice to persuade his colleagues does not require him to yield to their views, if he has a deep conviction that the issue is sufficiently important. Moreover, the Court operates ultimately by majority. Even though a minority may bring a case here for oral argument, that does not mean that the majority has given up its right to vote on the ultimate disposition of the case as conscience directs. This is not a novel doctrine. As a matter of practice, members of the Court have at various times exercised this right of refusing to pass on the merits of cases that in their view should not have been granted review.

This does not make the "rule of four" a hollow rule. I would not change the practice. No Justice is likely to vote to dismiss a writ of certiorari as improvidently granted after argument has been heard, even though he has not been convinced that the case is within the rules of the Court governing the granting of certiorari.

---

[5] See discussion of this point in *Rice* v. *Sioux City Cemetery*, 349 U. S. 70, and cases there collected at p. 78, n. 2.

In the usual instance, a doubting Justice respects the judgment of his brethren that the case does concern issues important enough for the Court's consideration and adjudication. But a different situation is presented when a class of cases is systematically taken for review. Then a Justice who believes that such cases raise insignificant and unimportant questions—insignificant and unimportant from the point of view of the Court's duties—and that an increasing amount of the Court's time is unduly drained by adjudication of these cases cannot forego his duty to voice his dissent to the Court's action.

The "rule of four" is not a command of Congress. It is a working rule devised by the Court as a practical mode of determining that a case is deserving of review, the theory being that if four Justices find that a legal question of general importance is raised, that is ample proof that the question has such importance. This is a fair enough rule of thumb on the assumption that four Justices find such importance on an individualized screening of the cases sought to be reviewed. The reason for deference to a minority view no longer holds when a class of litigation is given a special and privileged position.

The history of the Federal Employers' Liability Act reveals the continuing nature of the problem of review by this Court of the vast litigation under that Act in both the federal and state courts. The initial Federal Employers' Liability Act, 34 Stat. 232, was declared unconstitutional in the first *Employers' Liability Cases,* 207 U. S. 463. The second Employers' Liability Act, 35 Stat. 65, drafted to meet the constitutional infirmity found in the first Act, was sustained in the *Second Employers' Liability Cases,* 223 U. S. 1. Under the general statutory scheme of review of litigation by the Supreme Court in force at that time, all cases arising

under the Federal Employers' Liability Act, whether coming from the state or federal courts, were reviewable in the Supreme Court by writ of error, that is, as a matter of right. After the constitutionality of the Act had been sustained, cases began to flow to the Supreme Court and within a few years the Court was threatened with an avalanche of litigation under the Act. In the 1915 Term, the Court delivered opinions in 19 cases involving an assessment of the evidence to determine whether submission to the jury was warranted. See Appendices A and B, and starred footnote to Appendix A, *post,* pp. 548, 549.

To relieve the Court of this burden of reviewing the large volume of insignificant litigation under the Federal Employers' Liability Act was one of the principal reasons for passage of the Act of September 6, 1916, 39 Stat. 726. See S. Rep. No. 775, 64th Cong., 1st Sess.; H. R. Rep. No. 794, 64th Cong., 1st Sess. In thus freeing the Court from unrestricted access to it of cases that have no business here, Congress assimilated Federal Employers' Liability Act litigation to those other categories of cases— *e. g.,* diversity, patent, admiralty, criminal cases—that Congress had in 1891, 26 Stat. 826, 828, withdrawn from this Court's obligatory jurisdiction. Believing review in the state appellate systems or in the newly created Circuit Courts of Appeals sufficient, it made the lower courts' decisions final also in this class of litigation in all but the unusual cases raising significant legal questions. Thereafter such cases could be reviewed by the Supreme Court only on certiorari to "secure uniformity of decision" between the Circuit Courts of Appeals and "to bring up cases involving questions of importance which it is in the public interest to have decided by this Court of last resort. The jurisdiction was not conferred upon this Court merely to give the defeated party in the Circuit Court of Appeals another hearing. . . . These remarks, of course, apply

also to applications for certiorari to review judgments and decrees of the highest courts of States." *Magnum Co.* v. *Coty,* 262 U. S. 159, 163–164. (See also *Hamilton-Brown Shoe Co.* v. *Wolf Brothers & Co.,* 240 U. S. 251, 257–258: certiorari jurisdiction "is a jurisdiction to be exercised sparingly, and only in cases of peculiar gravity and general importance, or in order to secure uniformity of decision.") The statement for the Court by Mr. Chief Justice Taft in the *Coty* case indicates the strict criteria governing certiorari policy observed by the Court, except occasionally in FELA cases, previous to the Act of 1925, by which Congress put the Court's docket for all practical purposes in its own keeping. (For a more detailed history of the origin of certiorari jurisdiction, see Frankfurter and Landis, Business of The Supreme Court, cc. II, III, V, and VII.)

The vast extension of discretionary review by the Supreme Court on writ of certiorari contained in the Judges Bill of 1925, 43 Stat. 936, led the Court to promulgate formal rules, and not rely on admonitions in opinions, regarding conditions under which petitions for certiorari would be granted. The present Rule 19 of the Revised Rules of the Supreme Court contains the substance of the original Rule 35 (5) of the Revised Rules of 1925, 266 U. S. 645, 681, and perhaps in view of the issue in these cases it is not unwarranted to set forth the full text of that rule:

"1. A review on writ of certiorari is not a matter of right, but of sound judicial discretion, and will be granted only where there are special and important reasons therefor. The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered:

"(a) Where a state court has decided a federal question of substance not theretofore determined by

this court, or has decided it in a way probably not in accord with applicable decisions of this court.

"(b) Where a court of appeals has rendered a decision in conflict with the decision of another court of appeals on the same matter; or has decided an important state or territorial question in a way in conflict with applicable state or territorial law; or has decided an important question of federal law which has not been, but should be, settled by this court; or has decided a federal question in a way in conflict with applicable decisions of this court; or has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of this court's power of supervision.

"2. The same general considerations outlined above will control in respect of petitions for writs of certiorari to review judgments of the Court of Claims, of the Court of Customs and Patent Appeals, or of any other court whose determinations are by law reviewable on writ of certiorari."

Of course, cases raising questions that are not evidentiary, questions that fairly involve the construction or scope of the statute are appropriate for review here. See, e. g., *Minneapolis & St. L. R. Co.* v. *Bombolis,* 241 U. S. 211; *Southern Pacific Co.* v. *Gileo,* 351 U. S. 493; *Reed* v. *Pennsylvania R. Co.,* 351 U. S. 502. But the ordinary negligence case under the Federal Employers' Liability Act does not satisfy the criteria that define the "special and important reasons" when a writ of certiorari will be granted, and this may perhaps best be appreciated by summarizing the course of proceedings in each of the four cases now before us.

In No. 28, the petitioner brought suit for damages, alleging negligence on the part of respondent railroad in providing an unsafe place to work and an unsafe method

for doing his work. Petitioner was engaged in burning weeds on respondent's right of way with a hand torch. He heard a whistle indicating an approaching train. He ran thirty to thirty-five yards along the track from the fire and, thinking himself far enough from the fire danger, stood near a drainage culvert watching the passing train for "hotboxes." The train caused the fire to come "right up in [his] face." Petitioner backed away with his arm over his face and fell down the incline of the culvert. There was considerable testimony concerning the circumstances of the accident, the methods of burning weeds, the duties of railroad workers, the condition of the right of way, in particular the condition of the culvert, and petitioner's knowledge of those conditions. Respondent's motions for a directed verdict at the close of petitioner's case and at the close of all the evidence were denied. The case was submitted to the jury, which returned a verdict for petitioner.

On appeal, the Missouri Supreme Court reversed. 284 S. W. 2d 467. Considering the evidence from a standpoint most favorable to the petitioner, it held that there was insufficient evidence of negligence on the part of respondent, and that even if there were sufficient evidence of negligence, there was no evidence to show that such negligence contributed to petitioner's injury.

In No. 42, petitioner brought suit for injuries suffered as a result of respondent railroad's alleged failure to use ordinary care in furnishing him with a reasonably safe place to work. There was little dispute over the circumstances of the accident, which are set forth in the opinion of the Court of Appeals for the Seventh Circuit, 228 F. 2d 257, 258:

"Plaintiff had been employed by defendant in various capacities since about 1925 and was, on July 2, 1952, when the accident occurred, working as a brakeman, being assigned to the crew of a local

freight run between the cities of East St. Louis and Clinton, Illinois. During the course of his duties, in a switching operation at Mount Olive, he noticed that a wheat car in the train was leaking. While the other crew members continued with the task of picking up cars to be incorporated into the train, he started back to the caboose to get some waste to plug the hole in the leaking car. He turned and, on the first step he took, tripped and fell with his left leg buckled under him. He thereby sustained a serious injury to his left kneecap. The accident occurred on the roadbed of defendant's 'house track' at a point about one foot from the end of the ties. After plaintiff fell, he looked to see what had caused him to fall and saw a clinker 'about the size of my fist' which was partly out of the ground, and a hole beside the clinker. . . . Plaintiff stated that he looked 'at the ground' before he stepped but did not see the clinker. He stated further that the footing on the roadbed looked level but was a little soft."

Defendant's motions for a directed verdict at the close of petitioner's case and at the close of all the evidence were denied, and the jury returned a verdict for petitioner. The Court of Appeals reversed. It held that the possibility that "defendant placed the clinker in its roadbed as a part of the ballast used in the repair operation is merely one of several possibilities present. A finding that it did so can rest on nothing but speculation." The Court of Appeals also stated that "there is a total want of evidence as to what constitutes reasonable prudence under the proved circumstances," and that the record "is equally lacking in evidence to prove that defendant had actual or constructive notice of the dangerous condition." *Id.*, at 259, 260.

In No. 46, petitioner appealed to the Court of Appeals for the Sixth Circuit from a directed verdict for respond-

ent railroad. He gave the only testimony with respect to the accident and testified that, while the train was proceeding slowly, it made a sudden stop which threw him to the floor of the caboose where he was riding. The official report of the accident, which he signed, stated that the stop was made to avoid striking an automobile at a grade crossing. Petitioner gave some further testimony about the operation of air brakes, the frequency of emergency braking in his experience, and other methods of slowing down the train than by emergency braking. On this record, the Court of Appeals found a complete absence of probative facts to warrant submission of the case to the jury, and it affirmed the judgment of the District Court. 228 F. 2d 902.

No. 59 was an appeal under the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, whose standard of liability is explicitly that of the Federal Employers' Liability Act in this type of case; this case therefore presents the same problem for the Court as the other three. Petitioner had obtained a judgment, which was reversed by the Court of Appeals for the Second Circuit for failure of proof of negligence. The facts and reasons for reversal are set forth in the opinion of that court:

"Plaintiff was a baker engaged at the time of the accident in serving ice cream in the galley on C deck of defendant's SS Brazil. Using the standard ice cream scoop provided for the purpose, plaintiff disposed of the contents of a half used tub and had worked his way about half way down a full additional tub. There he found the ice cream 'as hard as a brickbat,' and the scoop became useless. So it occurred to plaintiff that about a foot and a half from where he was serving and 'kept underneath the griddle' was a butcher knife, about eighteen inches long and as sharp as a razor, which might be used to chip the ice cream into small pieces. He was chipping

away when his hand slipped and he was badly cut, resulting later in the loss of two fingers of his right hand.

". . . The negligence [of defendant] is supposed to stem from a failure to provide a safe place to work and safe tools and appliances. Reliance is also placed upon the fact that plaintiff had been directed to fill the orders brought into the galley by the waiters and it is said that there must have been something wrong with the refrigeration system or the ice cream would not have been so hard.

"But no one in authority told plaintiff to use the butcher knife, which was customarily used in cutting French bread. The knife was properly in the galley and there was nothing defective about it. But it was never designed for or intended to be used as a dagger or ice pick for chipping frozen ice cream. And that it would be put to such use was not within the realm of reasonable foreseeability . . . .

"There being no proof of fault on the part of the shipowner, defendant's motion for a directed verdict should have been granted." 228 F. 2d 891.

In all good conscience, what "special and important" reason for granting certiorari do the facts in any one of these cases disclose? In three of them, the trial judge had allowed a case to go to the jury, and three unanimous reviewing courts—two Courts of Appeals and one state Supreme Court—had reversed for lack of evidence. In each of these cases, this Court has combed the record and found that there was sufficient evidence for the case to go to the jury, although in No. 28 the Court found evidence of negligence in the fact that "[c]ommon experience" teaches "that a passing train will fan the flames of a fire," whereas in No. 46 the Court found insufficiency of evidence to go to the jury because "there is no evidence to

show that unscheduled and sudden stops of trains are unusual or extraordinary occurrences." In No. 46, the Court therefore affirms the judgment of the Court of Appeals, which had affirmed the direction of a verdict for defendant.

In any event, the Court in these four cases has merely reviewed evidence that has already been reviewed by two lower courts, and in so doing it ignores its own strictures to the bar that "We do not grant a certiorari to review evidence and discuss specific facts." *United States* v. *Johnston*, 268 U. S. 220, 227. See also *Houston Oil Co.* v. *Goodrich*, 245 U. S. 440; *Southern Power Co.* v. *North Carolina Public Service Co.*, 263 U. S. 508; *General Talking Pictures Corp.* v. *Western Electric Co.*, 304 U. S. 175, 178. Constant complaints have been made by successive Chief Justices about the large number of frivolous petitions that are filed each Term, "frivolous" meaning that the issues are not deserving of consideration for review when judged by the Court's instructions to the bar. See the remarks of Chief Justice Taft, in 35 Yale L. J. 1, 3–4; Chief Justice Hughes, in 20 A. B. A. J. 341; Chief Justice Vinson, in 69 S. Ct. v, vi–vii. If the Court does not abide by its Rules, how can it expect the bar to do so? Standards must be enforced to be respected. If they are merely left as something on paper, they might as well be written on water.

The rule that the Court does not grant certiorari to review evidence is a wise rule, indeed indispensable to the work of the Court, and is as equally applicable to negligence cases as to any other type of case. Perhaps a word should be said about the basis of the cause of action under the Federal Employers' Liability Act. Liability under the Act is based on negligence.[6] As far as the sub-

---

[6] The attempts to substitute a workmen's compensation law are detailed in Miller, The Quest for a Federal Workmen's Compensation Law, 18 Law and Contemporary Problems 188.

stantive cause of action is concerned, this is the historic cause of action for negligence as it has developed from the common law. It involves the same general concept on which is based every "negligence case" in the state courts and in the multitudinous cases in the federal courts on diversity of citizenship in which the question is merely one of common-law negligence; that is, it is the familiar type of litigation that is part of the day-to-day business of state and federal trial judges.

The 1908 Act denied the railroads the benefit of certain common-law defenses and the 1939 amendment, 53 Stat. 1404, abolished the defense of assumption of risk, but the fact that a right to recover is not barred by what theretofore was a defense does not change the basis of the right. This has been recognized in the opinions of this Court in which it has reversed lower courts on the question of the sufficiency of the evidence. The Court has never intimated that the concept of negligence, undefined in the statute, has some special or esoteric content as used in the Act or is anything other than a statutory absorption of the common-law concept.[7]

"One's deep sympathy is of course aroused by a victim of the hazards of negligence litigation in situations like the one before us. But the remedy for an obsolete and uncivilized system of compensation for loss of life or limb of crews on ships and trains is not intermittent disregard of the considerations which led Congress to entrust this Court with the discretion of certiorari jurisdiction. The remedy is an adequate and effective system of workmen's

---

[7] See, e. g., *Wilkerson* v. *McCarthy*, 336 U. S. 53, 69: "The basis of liability under the Act is and remains negligence." (Concurring opinion of DOUGLAS, J.) To be sure, on the question of causality, the statute has tried to avoid issues about "sole proximate cause," meeting the requirement of a causal relation with the language that the injury must result "in whole or in part" from the employer's negligence. See, e. g., *Illinois Central R. Co.* v. *Skaggs*, 240 U. S. 66, 69–70.

compensation," adequate in amount and especially prompt in administration. *McAllister* v. *United States,* 348 U. S. 19, 23–24 (separate opinion). It deserves to be recorded that Professor John Chipman Gray, a legal scholar with social insight, taught his students fifty years ago, before the first workmen's compensation law had been enacted, that it is anachronistic to apply the common-law doctrine of negligence to injuries suffered by railroad employees rather than have society recognize such injuries as inevitable incidents of railroading and provide compensation on that basis. The persistence of this archaic and cruel system is attributable to many factors. Inertia of course. But also it is merely one illustration of the lag of reform because of the opposition of lawyers who resist change of the familiar, particularly when they have thriven under some outworn doctrine of law.[8] Finally, one cannot acquit the encouragement given by this Court for seeking success in the lottery of obtaining heavy verdicts of contributing to the continuance of this system of compensation whose

---

[8] See Elihu Root's address to the American Bar Association in 1914: "Lawyers are essentially conservative. They do not take kindly to change. They are not naturally reformers. Their time is occupied mainly in thinking and arguing about what the law of the particular case is; about what the facts of the case are. The most successful lawyers are, as a rule, continually engrossed in their own cases and they have little time and little respect for the speculative and hypothetical. The lawyers who have authority as leaders of opinion are men, as a rule, who have succeeded in their profession, and men naturally tend to be satisfied with the conditions under which they are succeeding." Root, Addresses on Government and Citizenship, 479, 484. See also Gibson, The Venue Clause and Transportation of Lawsuits, 18 Law and Contemporary Problems 367, for some statistics bearing on the interest of lawyers in the continuance of the present system. The author cites the example of one specialist in personal injury litigation whose administrator collected a minimum of $1,111,935 in fees from 150 lawsuits pending at the date of the lawyer's death.

essential injustice can hardly be alleviated by the occasional "correction" in this Court of ill-success.

Rather than paraphrase, I shall repeat what I have already said about negligence cases and certiorari policy in *Wilkerson* v. *McCarthy,* 336 U. S. 53, 64, 66: "Considering the volume and complexity of the cases which obviously call for decision by this Court, and considering the time and thought that the proper disposition of such cases demands, I do not think we should take cases merely to review facts already canvassed by two and sometimes three courts even though those facts may have been erroneously appraised. The division in this Court would seem to demonstrate beyond peradventure that nothing is involved in this case except the drawing of allowable inferences from a necessarily unique set of circumstances. For this Court to take a case which turns merely on such an appraisal of evidence, however much hardship in the fallible application of an archaic system of compensation for injuries to railroad employees[9] may touch our private sympathy, is to deny due regard to the considerations which led the Court to ask and Congress to give the power to control the Court's docket. Such power carries with it the responsibility of granting review only in cases that demand adjudication on the basis of importance to the operation of our federal system; importance of the outcome merely to the parties is not enough. . . ." See also *Carter* v. *Atlanta & St. A. B. R. Co.,* 338 U. S. 430, 437; *McAllister* v. *United States,* 348 U. S. 19, 23.

The Court finds justification for granting certiorari in an alleged conflict of these decisions of the Courts of Appeals for the Second, Sixth, and Seventh Circuits and the Supreme Court of Missouri with the applicable deci-

---

[9] An archaic system, I might add, that encourages pursuit of big verdicts in individual cases, a preoccupation that has attained the dignity of full documentation of sensational methods by which a jury's feelings may be exploited.

sions of this Court. All that can fairly be said is that these courts found that there was not evidence to bring these cases within the recognized rules for submitting a case to the jury. In none of them is there any intimation or atmospheric indication of unwillingness to enforce the governing rules of the Act as laid down by this Court. These rules are well known. That there should be differences of opinion in their application is almost inevitable.[10] But once Congress in 1916 commanded that the ordinary Federal Employers' Liability Act case, like other essentially private litigation, should reach a final decision in the Courts of Appeals or the state appellate tribunals, this Court should never have granted certiorari to assess the evidence in any of them.[11] I would not continue a bad practice to aid a few plaintiffs because there was once a bad practice that aided a few defendants. One still does not commit two wrongs to "do right."

This is not the supreme court of review for every case decided "unjustly" by every court in the country. The

---

[10] "If there were a bright line dividing negligence from non-negligence, there would be no problem. Only an incompetent or a wilful judge would take a case from the jury when the issue should be left to the jury. But since questions of negligence are questions of degree, often very nice differences of degree, judges of competence and conscience have in the past, and will in the future, disagree as to whether proof in a case is sufficient to demand submission to the jury. The fact that a third court thinks there was enough to leave the case to the jury does not indicate that the other two courts were unmindful of the jury's function. The easy but timid way out for a trial judge is to leave all cases tried to a jury for jury determination, but in so doing he fails in his duty to take a case from the jury when the evidence would not warrant a verdict by it. A timid judge, like a biased judge, is intrinsically a lawless judge." *Wilkerson* v. *McCarthy*, 336 U. S. 64, 65 (concurring).

[11] Any notion that the practice of directing verdicts offends the Seventh Amendment was laid to rest in *Galloway* v. *United States*, 319 U. S. 372.

Court's practice in taking these Federal Employers' Liability Act cases discriminates against other personal injury cases, for example those in the federal courts on diversity jurisdiction. Similar questions of negligence are involved there and the opportunity for swallowing up more of the Supreme Court's energy is very great indeed. While 1,332 cases were commenced under the Federal Employers' Liability Act in the Federal District Courts in the fiscal year 1956 and 2,392 cases under the Jones Act, 11,427 personal injury cases were begun under the diversity jurisdiction in the District Courts. Annual Report of the Director of the Administrative Office of the United States Courts—1956, pp. 52–53. The Court may well have had this discrimination in mind when it granted certiorari in the diversity case of *Gibson* v. *Phillips Petroleum Co.*, 352 U. S. 874, and decided it on the merits. A few more such decisions and a flood of petitions from this source may confidently be expected. Whether or not it be true that we are a litigious people, it is a matter of experience that clients, if not lawyers, have a strong urge to exhaust all possibility of further appeal, particularly when judicially encouraged to do so. Disappointed litigants and losing lawyers like to have another go at it, and why should they not try when certiorari was granted in cases like these?

It is not enough, however, to deal with this problem on an abstract, theoretical basis. The statistical history of the Federal Employers' Liability Act, as set forth in the tables in the appendices to this opinion, gives concrete evidence of the recurring nature of the problem and the time-consuming nature of the litigation. In the early years of the Act, when review by this Court was on writ of error, there was a large number of cases in which sufficiency of evidence was at issue. Contrary to general belief, however, employees fared well in this type of case. Of the 42 cases decided by the Court raising that issue,

a judgment for the plaintiff was reversed for evidentiary reasons in only three cases and a judgment for the defendant railroad upheld in only seven. In the other 32 cases, judgments for plaintiffs were affirmed or judgments for defendants reversed.

Once easy access to this Court was shut off by the discretionary power of review over these cases that was given to the Court in 1916, few FELA decisions were rendered, and only four, of which one was on writ of error, dealing with the sufficiency of the evidence, in the five-year period covered by the 1918 through the 1922 Terms. During the next ten years, however, the Court concerned itself more and more with the Act, but during this era the railroads tended to prevail. Thirty-five decisions were rendered from the 1923 Term through the 1932 Term. In 27 of these a judgment for a plaintiff was reversed for evidentiary reasons; in another the Court affirmed the reversal of a judgment for a plaintiff; and in another the Court reversed the reversal of a directed verdict for a railroad. (For a review of certiorari policy under the FELA during this period, see Frankfurter and Landis, Business of the Supreme Court at October Term, 1931, 46 Harv. L. Rev. 226, 240–253.)

Thereafter, during the remaining eight Terms of Mr. Chief Justice Hughes, the number of sufficiency-of-the-evidence cases under the Act that were granted review fell off considerably. Only seven decisions were rendered during that period. The next nine-year period, however, saw a large increase again, with 27 decisions during the 1941 through 1949 Terms. Unlike the previous experience with the Act, it was not efforts of railroads seeking to reverse judgments in favor of injured workers that constituted the major portion of the business during this period, but rather efforts by injured workers to upset judgments for railroads. And they were successful. Judgments for railroads were sustained in only four

cases. In all the others, the Court reversed a judgment of a lower court that either had reversed a jury verdict for a plaintiff or had affirmed a judgment for a railroad.

In the following four Terms, business again slackened and only two cases concerning sufficiency of the evidence were decided under the Act. We now seem to have entered again on a period of renewed activity by the Court in this field. Two decisions were rendered in the 1954 Term, three in the 1955 Term, four thus far this Term, and two additional petitions for certiorari have already been granted this Term.

A further indication of the tendency in recent Court decisions is provided by a study of petitions for certiorari in FELA cases from the 1938 through the 1954 Terms. This study disclosed that of the 260 petitions filed, sufficiency of the evidence of negligence or of causation for submission to the jury was the predominant question in 149. Seventy-eight of these petitions were filed by the employee and all of the 37 granted petitions were from this group, except one in which the writ was later dismissed as improvidently granted. *McCarthy* v. *Bruner,* certiorari granted, 322 U. S. 718, certiorari dismissed, 323 U. S. 673. Certiorari Policy in FELA Cases, 69 Harv. L. Rev. 1441, 1445–1446.

These figures tell only a small part of the story. While this opinion concerns itself principally with cases under the Federal Employers' Liability Act, the same kind of question arises under many other statutes. See footnote 2, *supra.* And experience leaves no doubt, though the fact cannot be established statistically, that by granting review in these cases, the Court encourages the filing of petitions for certiorari in other types of cases raising issues that likewise have no business to be brought here. Moreover, the considerations governing discharge of the Court's function involve only in part quantitative factors. Finally, and most important, granting review in

one or two cases that present a compassionate appeal on this ground and one or two that present a compassionate appeal on that ground and one or two that present a compassionate appeal on a third ground inevitably makes that drain upon the available energy of the Court that is so inimical to the fullest investigation of, the amplest deliberation on, the most effective opinion-writing and the most critical examination of draft opinions in, the cases that have unquestioned claims upon the Court.

It is impossible to read the 106 written opinions of the Supreme Court dealing with this type of issue, see Appendices A and B, without feeling that during different periods the Court, while using the same generalities in speaking about the relation of judge and jury to the cause of action for negligence, has applied those principles differently from time to time to the facts of different cases. The divided views on this Court today with respect to the application of those principles merely reflect the divided views of state and federal judges throughout the country on problems of negligence.   As long as there is a division of functions between judge and jury, there will be division of opinion concerning the correctness of trial judges' actions in individual cases.   But since the law obviously does not remain "settled" in this field very long, one does not have to be a prophet to be confident that the Court, if it continues its present certiorari policy, will one day return to its attitude of the 1920's in these individual cases.   With a changed membership, the Court might tomorrow readily affirm all four of the cases that it decides today.   There is nothing in the Federal Employers' Liability Act to say which view is correct.   The Act expressed a social policy, and it expressed that policy in terms of a familiar, but elusively inapt, common-law cause of action. It is suggested in effect that the history of FELA litigation in this Court reveals a shift in mood, philosophy if one pleases, towards the Federal Employers' Liability Act—

that at one time the chief concern may be lively regard for what are conceived to be unfair inroads upon the railroads' exchequer [12] while at another period the preoccupation may be with protection of employees and their families, so far as money damages can do so, against the inherent hazards of their indispensable labor. Be that as it may, the desire to engraft a philosophy, either philosophy, upon an outmoded, unfair system of liability should not lead the Court to bend the rules by which it is governed in other cases in the exercise of its discretionary jurisdiction.

This unvarnished account of Federal Employers' Liability Act litigation in this Court relating to sufficiency of the evidence for submission of cases to the jury is surely not an exhilarating story. For the Supreme Court of the United States to spend two hours of solemn argument, plus countless other hours reading the briefs and record and writing opinions, to determine whether there was evidence to support an allegation that it could reasonably be foreseen that an ice-cream server on a ship would use a butcher's knife to scoop out ice cream that was too hard to be scooped with a regular scoop, is surely to misconceive the discretion that was entrusted to the wisdom of the Court for the control of its calendar. The Court may or may not be "doing justice" in the four insignificant cases it decides today; it certainly is doing injustice to the significant and important cases on the calendar and to its own role as the supreme judicial body of the country.

It is, I believe, wholly accurate to say that the Court will be enabled to discharge adequately the vital, and, I feel, the increasingly vital, responsibility it bears for the

---

[12] "The cause is one of a peculiar class where we have frequently been obliged to give special consideration to the facts in order to protect interstate carriers against unwarranted judgments and enforce observance of the Liability Act as here interpreted." *Atchison, T. & S. F. R. Co.* v. *Saxon,* 284 U. S. 458, 459.

general welfare only if it restricts its reviewing power to the adjudication of constitutional issues or other questions of national importance, including therein settlement of conflict among the circuits. Surely it was this conviction, born of experience, that led the Court to ask of Congress that of the great mass of litigation in the state and federal courts only those cases should be allowed to be brought here that this Court deemed fit for review. Such was the jurisdictional policy accepted by Congress when it yielded to the Court's realization of the conditions necessary for its proper functioning.

For one thing, as the current United States Reports compared with those of even a generation ago amply prove, the types of cases now calling for decision to a considerable extent require investigation of voluminous literature far beyond the law reports and other legal writings. If it is to yield its proper significance, this vast mass of materials, often confused and conflicting, must be passed through the sieve of reflection. Judicial reflection is a process that requires time and freedom from the pressure of having more work to do than can be well done. It is not a bit of quixotism to believe that, of the 63 cases scheduled for argument during the remaining months of this Term, there are a half dozen that could alone easily absorb the entire thought of the Court for the rest of the Term.

The judgments of this Court are collective judgments. Such judgments are especially dependent on ample time for private study and reflection in preparation for discussion in Conference. Without adequate study, there cannot be adequate reflection; without adequate reflection, there cannot be adequate discussion; without adequate discussion, there cannot be that full and fruitful interchange of minds that is indispensable to wise decisions and persuasive opinions by the Court. Unless the Court vigorously enforces its own criteria for granting review of

cases, it will inevitably face an accumulation of arrears or will dispose of its essential business in too hurried and therefore too shallow a way.

I would dismiss all four writs of certiorari as improvidently granted.

[For opinion of MR. JUSTICE HARLAN, see *post*, p. 559.]

## APPENDIX A.

DECISIONS RELATING TO SUFFICIENCY OF THE EVIDENCE UNDER THE FELA, TERM BY TERM.*

| | | | |
|---|---|---|---|
| 1911 | 1 | 1918 | 1 |
| 1912 | 2 | 1919 | 2 |
| 1913 | 4 | 1920 | 1 |
| 1914 | 4 | 1921 | 0 |
| 1915 | 19 | 1922 | 0 |
| 1916 | 6 | 1923 | 3** |
| 1917 | 5 | 1924 | 2 |

*This table restricts itself to decisions on the sufficiency of the evidence relating to the substantive cause of action for submission to the jury. It does not take into account other sufficiency-of-the-evidence cases, *e. g.*, was an employee engaged in interstate commerce, that raise somewhat different problems but are all too often also outside the appropriate bounds of certiorari jurisdiction.

In some of the cases resulting in an affirmance of a judgment for an employee, sufficiency of the evidence was only one of the questions considered. It is impossible to ascertain why certiorari was granted, but these cases are included in the table because the Court did not restrict its grant of certiorari to the other issues, as it frequently does, and did consider the sufficiency-of-the-evidence question.

**These figures include 1 summary *per curiam* disposition on the merits in the 1923 Term, 1 in the 1928 Term, 1 in the 1939 Term, 1 in the 1940 Term, 1 in the 1941 Term, 2 in the 1945 Term, 1 in the 1946 Term, 4 in the 1947 Term, 2 in the 1948 Term, 2 in the 1954 Term, and 3 in the 1955 Term. See 69 Harv. L. Rev. 1441, 1446, n. 30. The Reports have not been examined for summary dispositions on the merits prior to 1938. That practice did not become established in these cases until then, and prior to that time was at most desultory.

| | | | |
|---|---|---|---|
| 1925............ | 4 | 1941............ | 1** |
| 1926............ | 0 | 1942............ | 3 |
| 1927............ | 6 | 1943............ | 2 |
| 1928............ | 6** | 1944............ | 2 |
| 1929............ | 4 | 1945............ | 3** |
| 1930............ | 1 | 1946............ | 4** |
| 1931............ | 7 | 1947............ | 4** |
| 1932............ | 2 | 1948............ | 6** |
| 1933............ | 1 | 1949............ | 2 |
| 1934............ | 1 | 1950............ | 1 |
| 1935............ | 1 | 1951............ | 0 |
| 1936............ | 0 | 1952............ | 1 |
| 1937............ | 0 | 1953............ | 0 |
| 1938............ | 1 | 1954............ | 2** |
| 1939............ | 1** | 1955............ | 3** |
| 1940............ | 2** | 1956............ | 4 |

**See footnote on p. 548.

## APPENDIX B.

DECISIONS RELATING TO SUFFICIENCY OF THE EVIDENCE
UNDER THE FEDERAL EMPLOYERS' LIABILITY ACT.

(* *Indicates Summary Disposition Per Curiam.*)

1911 Term.

*Texas & P. R. Co.* v. *Howell,* 224 U. S. 577; affirmance of judgment for plaintiff affirmed.

1912 Term.

*Troxell* v. *Delaware, L. & W. R. Co.,* 227 U. S. 434; reversal of judgment for plaintiff reversed.

*Norfolk & W. R. Co.* v. *Earnest,* 229 U. S. 114; judgment for plaintiff affirmed.

1913 Term.

*Young* v. *Central R. Co. of N. J.*, 232 U. S. 602; remand for entry of judgment n. o. v. for defendant modified and affirmed.

*Grand Trunk Western R. Co.* v. *Lindsay*, 233 U. S. 42; affirmance of judgment for plaintiff affirmed.

*Southern R. Co.* v. *Bennett*, 233 U. S. 80; affirmance of judgment for plaintiff affirmed.

*Southern R. Co.* v. *Gadd*, 233 U. S. 572; affirmance of judgment for plaintiff affirmed.

1914 Term.

*Yazoo & M. V. R. Co.* v. *Wright*, 235 U. S. 376; affirmance of judgment for plaintiff affirmed.

*McGovern* v. *Philadelphia & R. R. Co.*, 235 U. S. 389; directed verdict for defendant reversed.

*Seaboard Air Line R. Co.* v. *Padgett*, 236 U. S. 668; affirmance of judgment for plaintiff affirmed.

*Central Vermont R. Co.* v. *White*, 238 U. S. 507; affirmance of judgment for plaintiff affirmed.

1915 Term.

*Chicago, R. I. & P. R. Co.* v. *Devine*, 239 U. S. 52; affirmance of judgment for plaintiff affirmed.

*Seaboard Air Line R. Co.* v. *Koennecke*, 239 U. S. 352; affirmance of judgment for plaintiff affirmed.

*Reese* v. *Philadelphia & R. R. Co.*, 239 U. S. 463; affirmance of nonsuit affirmed.

*Chicago, R. I. & P. R. Co.* v. *Wright*, 239 U. S. 548; affirmance of judgment for plaintiff affirmed.

*Kanawha & M. R. Co.* v. *Kerse*, 239 U. S. 576; judgment for plaintiff affirmed.

*Seaboard Air Line R. Co.* v. *Horton*, 239 U. S. 595; affirmance of judgment for plaintiff affirmed.

*Illinois Central R. Co.* v. *Skaggs,* 240 U. S. 66; affirmance of judgment for plaintiff affirmed.

*Great Northern R. Co.* v. *Wiles,* 240 U. S. 444; reversal of judgment n. o. v. for defendant reversed.

*Great Northern R. Co.* v. *Knapp,* 240 U. S. 464; affirmance of judgment for plaintiff affirmed.

*Jacobs* v. *Southern R. Co.,* 241 U. S. 229; affirmance of judgment for defendant affirmed.

*Baugham* v. *New York, P. & N. R. Co.,* 241 U. S. 237; affirmance of judgment for defendant affirmed.

*Louisville & N. R. Co.* v. *Stewart,* 241 U. S. 261; affirmance of judgment for plaintiff affirmed.

*Seaboard Air Line R. Co.* v. *Renn,* 241 U. S. 290; affirmance of judgment for plaintiff affirmed.

*Chesapeake & O. R. Co.* v. *De Atley,* 241 U. S. 310; affirmance of judgment for plaintiff reversed.

*Southern R. Co.* v. *Gray,* 241 U. S. 333; affirmance of judgment for plaintiff reversed.

*Chesapeake & O. R. Co.* v. *Proffitt,* 241 U. S. 462; affirmance of judgment for plaintiff affirmed.

*Chicago & N. W. R. Co.* v. *Bower,* 241 U. S. 470; affirmance of judgment for plaintiff affirmed.

*San Antonio & A. P. R. Co.* v. *Wagner,* 241 U. S. 476; affirmance of judgment for plaintiff affirmed.

*Spokane & I. E. R. Co.* v. *Campbell,* 241 U. S. 497; affirmance of judgment for plaintiff affirmed.

1916 Term.

*Atlantic City R. Co.* v. *Parker,* 242 U. S. 56; affirmance of judgment for plaintiff affirmed.

*Baltimore & O. R. Co.* v. *Whitacre,* 242 U. S. 169; affirmance of judgment for plaintiff affirmed.

*St. Joseph & G. I. R. Co.* v. *Moore,* 243 U. S. 311; affirmance of judgment for plaintiff affirmed.

*New York Central & H. R. R. Co.* v. *Tonsellito,* 244 U. S. 360; affirmance of judgment for plaintiff affirmed.

*Southern R. Co.* v. *Puckett,* 244 U. S. 571; affirmance of judgment for plaintiff affirmed.

*Washington R. & Elec. Co.* v. *Scala,* 244 U. S. 630; affirmance of judgment for plaintiff affirmed.

1917 Term.

*Boldt* v. *Pennsylvania R. Co.,* 245 U. S. 441; affirmance of judgment for defendant affirmed.

*Union Pacific R. Co.* v. *Huxoll,* 245 U. S. 535; affirmance of judgment for plaintiff affirmed.

*Great Northern R. Co.* v. *Donaldson,* 246 U. S. 121; affirmance of judgment for plaintiff affirmed.

*Nelson* v. *Southern R. Co.,* 246 U. S. 253; reversal of judgment for plaintiff affirmed.

*Union Pacific R. Co.* v. *Hadley,* 246 U. S. 330; affirmance of judgment for plaintiff affirmed.

1918 Term.

*Gillis* v. *New York, N. H. & H. R. Co.,* 249 U. S. 515; affirmance of directed verdict for defendant affirmed.

1919 Term.

*Chicago, R. I. & P. R. Co.* v. *Ward,* 252 U. S. 18; affirmance of judgment for plaintiff affirmed.

*Boehmer* v. *Pennsylvania R. Co.,* 252 U. S. 496; affirmance of directed verdict for defendant affirmed.

1920 Term.

*Southern Pacific Co.* v. *Berkshire,* 254 U. S. 415; affirmance of judgment for plaintiff reversed.

1923 Term.

*Frese* v. *Chicago, B. & Q. R. Co.,* 263 U. S. 1; reversal of judgment for plaintiff affirmed.

*Davis* v. *Wolfe,* 263 U. S. 239; affirmance of judgment for plaintiff affirmed.

*Davis* v. *Matthews,* 263 U. S. 686;* affirmance of judgment for plaintiff affirmed.

1924 Term.

*Davis* v. *Kennedy,* 266 U. S. 147; affirmance of judgment for plaintiff reversed.

*Baltimore & O. R. Co.* v. *Groeger,* 266 U. S. 521; affirmance of judgment for plaintiff reversed for new trial; evidence found sufficient for submission to jury.

1925 Term.

*Minneapolis, St. P. & S. S. M. R. Co.* v. *Goneau,* 269 U. S. 406; affirmance of judgment for plaintiff affirmed.

*Chesapeake & O. R. Co.* v. *Nixon,* 271 U. S. 218; affirmance of judgment for plaintiff reversed.

*St. Louis-San Francisco R. Co.* v. *Mills,* 271 U. S. 344; affirmance of judgment for plaintiff reversed.

*Chicago, M. & St. P. R. Co.* v. *Coogan,* 271 U. S. 472; affirmance of judgment for plaintiff reversed.

1927 Term.

*Atlantic Coast Line R. Co.* v. *Southwell,* 275 U. S. 64; affirmance of judgment for plaintiff reversed.

*Missouri Pacific R. Co.* v. *Aeby,* 275 U. S. 426; affirmance of judgment for plaintiff reversed.

*Gulf, M. & N. R. Co.* v. *Wells,* 275 U. S. 455; affirmance of judgment for plaintiff reversed.

*Toledo, St. L. & W. R. Co.* v. *Allen,* 276 U. S. 165; affirmance of judgment for plaintiff reversed.

*Kansas City Southern R. Co.* v. *Jones,* 276 U. S. 303; affirmance of judgment for plaintiff reversed.

*Chesapeake & O. R. Co.* v. *Leitch,* 276 U. S. 429; affirmance of judgment for plaintiff reversed.

1928 Term.

*Unadilla Valley R. Co.* v. *Caldine,* 278 U. S. 139; affirmance of judgment for plaintiff reversed.

*Western & A. R. Co.* v. *Hughes,* 278 U. S. 496; affirmance of judgment for plaintiff affirmed.

*Atlantic Coast Line R. Co.* v. *Tyner,* 278 U. S. 565;* affirmance of judgment for plaintiff reversed.

*Delaware, L. & W. R. Co.* v. *Koske,* 279 U. S. 7; affirmance of judgment for plaintiff reversed.

*Atlantic Coast Line R. Co.* v. *Davis,* 279 U. S. 34; affirmance of judgment for plaintiff reversed.

*Atlantic Coast Line R. Co.* v. *Driggers,* 279 U. S. 787; affirmance of judgment for plaintiff reversed.

1929 Term.

*Chesapeake & O. R. Co.* v. *Mihas,* 280 U. S. 102; affirmance of judgment for plaintiff reversed.

*New York Central R. Co.* v. *Ambrose,* 280 U. S. 486; affirmance of judgment for plaintiff reversed.

*New York Central R. Co.* v. *Marcone,* 281 U. S. 345; affirmance of judgment for plaintiff affirmed.

*Atchison, T. & S. F. R. Co.* v. *Toops,* 281 U. S. 351; affirmance of judgment for plaintiff reversed.

1930 Term.

*Atlantic Coast Line R. Co.* v. *Powe,* 283 U. S. 401; affirmance of judgment for plaintiff reversed.

1931 Term.

*Chesapeake & O. R. Co.* v. *Kuhn,* 284 U. S. 44; affirmance of judgment for plaintiff reversed.

*Atchison, T. & S. F. R. Co.* v. *Saxon,* 284 U. S. 458; affirmance of judgment for plaintiff reversed.

*Missouri Pacific R. Co.* v. *David,* 284 U. S. 460; affirmance of judgment for plaintiff reversed.

*Atlantic Coast Line R. Co.* v. *Temple,* 285 U. S. 143; affirmance of judgment for plaintiff reversed.

*Southern R. Co.* v. *Youngblood,* 286 U. S. 313; affirmance of judgment for plaintiff reversed.

*Southern R. Co.* v. *Dantzler,* 286 U. S. 318; affirmance of judgment for plaintiff reversed.

*St. Louis S. W. R. Co.* v. *Simpson,* 286 U. S. 346; affirmance of judgment for plaintiff reversed.

1932 Term.

*Rocco* v. *Lehigh Valley R. Co.,* 288 U. S. 275; reversal of judgment for plaintiff reversed.

*Pennsylvania R. Co.* v. *Chamberlain,* 288 U. S. 333; reversal of directed verdict for defendant reversed.

1933 Term.

*Northwestern Pacific R. Co.* v. *Bobo,* 290 U. S. 499; affirmance of judgment for plaintiff reversed.

1934 Term.

*Swinson* v. *Chicago, St. P., M. & O. R. Co.,* 294 U. S. 529; directed verdict for defendant reversed.

1935 Term.

*Chicago G. W. R. Co.* v. *Rambo,* 298 U. S. 99; affirmance of judgment for plaintiff reversed.

1938 Term.

*Great Northern R. Co.* v. *Leonidas,* 305 U. S. 1; affirmance of judgment for plaintiff affirmed.

1939 Term.

*Keys* v. *Pennsylvania R. Co.,* 308 U. S. 529;* reversal of judgment for plaintiff reversed.

1940 Term.

*Jenkins* v. *Kurn,* 313 U. S. 256; reversal of judgment for plaintiff reversed.

*Steeley* v. *Kurn,* 313 U. S. 545;* reversal of judgment for plaintiff reversed.

1941 Term.

*Seago* v. *New York Central R. Co.,* 315 U. S. 781;* affirmance of judgment for defendant reversed.

1942 Term.

*Tiller* v. *Atlantic Coast Line R. Co.,* 318 U. S. 54; affirmance of directed verdict for defendant reversed.

*Bailey* v. *Central Vermont R. Co.,* 319 U. S. 350; reversal of judgment for plaintiff reversed.

*Owens* v. *Union Pacific R. Co.,* 319 U. S. 715; reversal of judgment for plaintiff reversed.

1943 Term.

*Brady* v. *Southern R. Co.,* 320 U. S. 476; reversal of judgment for plaintiff affirmed.

*Tennant* v. *Peoria & P. U. R. Co.,* 321 U. S. 29; reversal of judgment for plaintiff reversed.

1944 Term.

*Tiller* v. *Atlantic Coast Line R. Co.,* 323 U. S. 574; reversal of judgment for plaintiff reversed.

*Blair* v. *Baltimore & O. R. Co.,* 323 U. S. 600; reversal of entry of judgment for defendant reversed; sufficient evidence to support jury verdict for plaintiff.

1945 Term.

*Keeton* v. *Thompson,* 326 U. S. 689;* reversal of judgment for plaintiff reversed.

*Lavender* v. *Kurn,* 327 U. S. 645; reversal of judgment for plaintiff reversed.

*Cogswell* v. *Chicago & E. I. R. Co.,* 328 U. S. 820;* reversal of judgment for plaintiff reversed.

## 1946 Term.

*Jesionowski* v. *Boston & M·. R. Co.,* 329 U. S. 452; reversal of judgment for plaintiff reversed.

*Ellis* v. *Union Pacific R. Co.,* 329 U. S. 649; reversal of judgment for plaintiff reversed.

*Pauly* v. *McCarthy,* 330 U. S. 802;* reversal of judgment for plaintiff reversed.

*Myers* v. *Reading Co.,* 331 U. S. 477; affirmance of judgment n. o. v. for defendant reversed.

## 1947 Term.

*Lillie* v. *Thompson,* 332 U. S. 459;* affirmance of dismissal of complaint reversed.

*Hunter* v. *Texas Electric R. Co.,* 332 U. S. 827;* affirmance of judgment for defendant affirmed.

*Anderson* v. *Atchison, T. & S. F. R. Co.,* 333 U.·S. 821;* affirmance of judgment for defendant reversed.

*Eubanks* v. *Thompson,* 334 U. S. 854;* reversal of judgment for plaintiff reversed.

## 1948 Term.

*Eckenrode* v. *Pennsylvania R. Co.,* 335 U. S. 329; affirmance of judgment n. o. v. for defendant affirmed.

*Coray* v. *Southern Pacific Co.,* 335 U. S. 520; affirmance of directed verdict for defendant reversed.

*Penn* v. *Chicago & N. W. R. Co.,* 335 U. S. 849;* reversal of judgment for plaintiff reversed.

*Wilkerson* v. *McCarthy,* 336 U. S. 53; affirmance of directed verdict for defendant reversed.

*Reynolds* v. *Atlantic Coast Line R. Co.*, 336 U. S. 207;* affirmance of judgment for defendant on demurrer affirmed.

*Hill* v. *Atlantic Coast Line R. Co.*, 336 U. S. 911;* affirmance of nonsuit reversed.

### 1949 Term.

*Carter* v. *Atlanta & St. A. B. R. Co.*, 338 U. S. 430; affirmance of judgment for defendant reversed.

*Affolder* v. *New York, C. & St. L. R. Co.*, 339 U. S. 96; reversal of judgment for plaintiff reversed.

### 1950 Term.

*Moore* v. *Chesapeake & O. R. Co.*, 340 U. S. 573; affirmance of judgment for defendant n. o. v. affirmed.

### 1952 Term.

*Stone* v. *New York, C. & St. L. R. Co.*, 344 U. S. 407; reversal of judgment for plaintiff reversed.

### 1954 Term.

*Smalls* v. *Atlantic Coast Line R. Co.*, 348 U. S. 946;* reversal of judgment for plaintiff reversed.

*O'Neill* v. *Baltimore & O. R. Co.*, 348 U. S. 956;* reversal of judgment for plaintiff reversed.

### 1955 Term.

*Anderson* v. *Atlantic Coast Line R. Co.*, 350 U. S. 807;* reversal of judgment for plaintiff reversed.

*Strickland* v. *Seaboard Air Line R. Co.*, 350 U. S. 893;* reversal of judgment for plaintiff reversed.

*Cahill* v. *New York, N. H. & H. R. Co.*, 350 U. S. 898,* 351 U. S. 183; reversal of judgment for plaintiff reversed.

Mr. Justice Harlan, concurring in No. 46 and dissenting in Nos. 28, 42 and 59.*

## I.

I am in full agreement with what my Brother Frankfurter has written in criticism of the Court's recurring willingness to grant certiorari in cases of this type. For the reasons he has given, I think the Court should not have heard any of these four cases. Nevertheless, the cases having been taken, I have conceived it to be my duty to consider them on their merits, because I cannot reconcile voting to dismiss the writs as "improvidently granted" with the Court's "rule of four." In my opinion due adherence to that rule requires that once certiorari has been granted a case should be disposed of on the premise that it is properly here, in the absence of considerations appearing which were not manifest or fully apprehended at the time certiorari was granted. In these instances I am unable to say that such considerations exist, even though I do think that the arguments on the merits underscored the views of those of us who originally felt that the cases should not be taken because they involved only issues of fact, and presented nothing of sufficient general importance to warrant this substantial expenditure of the Court's time.

I do not think that, in the absence of the considerations mentioned, voting to dismiss a writ after it has been granted can be justified on the basis of an inherent right of dissent. In the case of a petition for certiorari that right, it seems to me—again without the presence of intervening factors—is exhausted once the petition has

---

*[Note: No. 46 is *Herdman* v. *Pennsylvania R. Co.*, *ante*, p. 518; No. 28 is *Rogers* v. *Missouri Pacific R. Co.*, *ante*, p. 500; No. 42 is *Webb* v. *Illinois Central R. Co.*, *ante*, p. 512; and No. 59 is *Ferguson* v. *Moore-McCormack Lines*, *ante*, p. 521.]

been granted and the cause set for argument.[1]  Otherwise the "rule of four" surely becomes a meaningless thing in more than one respect.  *First,* notwithstanding the "rule of four," five objecting Justices could undo the grant by voting, after the case has been heard, to dismiss the writ as improvidently granted—a course which would hardly be fair to litigants who have expended time, effort, and money on the assumption that their cases would be heard and decided on the merits.  While in the nature of things litigants must assume the risk of "improvidently granted" dismissals because of factors not fully apprehended when the petition for certiorari was under consideration, short of that it seems to me that the Court would stultify its own rule if it were permissible for a writ of certiorari to be annulled by the later vote of five objecting Justices.  Indeed, if that were proper, it would be preferable to have the vote of annulment come into play the moment after the petition for certiorari has been granted, since then at least the litigants would be spared useless effort in briefing and preparing for the argument of their cases.  *Second,* permitting the grant of a writ to be thus undone would undermine the whole philosophy of the "rule of four," which is that any case warranting consideration in the opinion of such a substantial minority of the Court will be taken and disposed of.  It appears to me that such a practice would accomplish just the contrary of what representatives of this Court stated to Congress as to the

---

[1] In some instances where the Court has granted certiorari and simultaneously summarily disposed of the case on the merits, individual Justices (including the writer) have merely noted their dissent to the grant without reaching the merits.  See, *e. g., Anderson* v. *Atlantic Coast Line R. Co.,* 350 U. S. 807; *Cahill* v. *New York, N. H. & H. R. Co.,* 350 U. S. 898.  Even here, I am bound to say, it would probably be better practice for a Justice, who has unsuccessfully opposed certiorari, to face the merits, and to dissent from the summary disposition rather than from the grant of certiorari if he is not prepared to reach the merits without full-dress argument.

"rule of four" at the time the Court's certiorari jurisdiction was enlarged by the Judiciary Act of 1925.[2] In effect the "rule of four" would, by indirection, become a "rule of five." *Third,* such a practice would, in my opinion, be inconsistent with the long-standing and desirable custom of not announcing the Conference vote on petitions for certiorari. For in the absence of the intervening circumstances which may cause a Justice to vote to dismiss a writ as improvidently granted, such a disposition of the case on his part is almost bound to be taken as reflecting his original Conference vote on the petition. And if such a practice is permissible, then by the same token I do not see how those who voted in favor of the petition can reasonably be expected to refrain from announcing their Conference votes at the time the petition is acted on.

My Brother FRANKFURTER states that the course he advocates will not result in making of the "rule of four" an empty thing, suggesting that in individual cases "a doubting Justice" will normally respect "the judgment of his brethren that the case does concern issues important enough for the Court's consideration and adjudication," and that it is only "when a class of cases is systematically taken for review" that such a Justice "cannot forego his duty to voice his dissent to the Court's action." However, it seems to me that it is precisely in that type of situation where the exercise of the right of dissent may well result in nullification of the "rule of four" by the action of five Justices. For differences of view as to the desirability of the Court's taking particular "classes" of cases—the situation we have here—are prone to lead to more or less definite lines of cleavage among the Justices, which past experience has shown may well

---

[2] See Burton, *Judging Is Also Administration,* 21 Temple Law Quarterly 77, 84–85, and n. 23 (1947).

involve an alignment of four Justices who favor granting certiorari in such cases and five who do not. If in such situations it becomes the duty of one Justice among the disagreeing five not to "forego" his right to dissent, then I do not see why it is not equally the duty of the remaining four, resulting in the "rule of four" being set at naught. I thus see no basis in the circumstance that a case is an "individual" one rather than one of a "class" for distinctions in what may be done by an individual Justice who disapproves of the Court's action in granting certiorari.

Although I feel strongly that cases of this kind do not belong in this Court, I can see no other course, consistent with the "rule of four," but to continue our Conference debates, with the hope that persuasion or the mounting calendars of the Court will eventually bring our differing brethren to another point of view.

## II.

Since I can find no intervening circumstances which would justify my voting now to dismiss the writs in these cases as improvidently granted, I turn to the merits of the four cases before us. I agree with, and join in, the Court's opinion in No. 46. I dissent in Nos. 28, 42 and 59. No doubt the evidence in the latter three cases can be viewed both as the three courts below did and as this Court does. So far as I can see all this Court has done is to substitute its views on the evidence for those of the Missouri Supreme Court and the two Courts of Appeals, and that is my first reason for dissenting. In my view we should not interfere with the decisions of these three courts in the absence of clear legal error, or some capricious or unreasonable action on their part. Nothing of that kind has been shown here. I would apply to cases of this type the reasoning of the Court in *Labor Board* v. *Pittsburgh Steamship Co.*, 340 U. S. 498,

502–503, dealing with review of decisions of the National Labor Relations Board by the Courts of Appeals:

> "Were we called upon to pass on the Board's conclusions in the first instance or to make an independent review of the review by the Court of Appeals, we might well support the Board's conclusion and reject that of the court below. But Congress has charged the Courts of Appeals and not this Court with [that] normal and primary responsibility . . . . The same considerations that should lead us to leave undisturbed, by denying certiorari, decisions of Courts of Appeals involving solely a fair assessment of a record on the issue of unsubstantiality, ought to lead us to do no more than decide that there was such a fair assessment when the case is here . . . .
>
> "This is not the place to review a conflict of evidence nor to reverse a Court of Appeals because were we in its place we would find the record tilting one way rather than the other, though fair-minded judges could find it tilting either way."

For my part, to overturn the judgments below simply involves second-guessing the Missouri Supreme Court, the Court of Appeals for the Seventh Circuit, and the Court of Appeals for the Second Circuit, on questions of fact on which they brought to bear judgments neither capricious nor unreasonable, and on which they made a "fair assessment of a record."

I dissent also for another reason. No scientific or precise yardstick can be devised to test the sufficiency of the evidence in a negligence case. The problem has always been one of judgment, to be applied in view of the purposes of the statute. It has, however, been common ground that a verdict must be based on evidence—not on a scintilla of evidence but evidence sufficient to enable a

*reasoning* man to infer both negligence and causation by *reasoning from the evidence. Moore* v. *Chesapeake & O. R. Co.,* 340 U. S. 573. And it has always been the function of the court to see to it that jury verdicts stay within that boundary, that they be arrived at by reason and not by will or sheer speculation. Neither the Seventh Amendment nor the Federal Employers' Liability Act lifted that duty from the courts. However, in judging these cases, the Court appears to me to have departed from these long-established standards, for, as I read these opinions, the implication seems to be that the question, at least as to the element of causation, is not whether the evidence is sufficient to convince a reasoning man, but whether there is any scintilla of evidence at all to justify the jury verdicts. I cannot agree with such a standard, for I consider it a departure from a wise rule of law, not justified either by the provision of the FELA making employers liable for injuries resulting "in whole or in part" from their negligence, or by anything else in the Act or its history, which evinces no purpose to depart in these respects from common-law rules.

For these reasons I think the judgments in Nos. 28, 42 and 59, as well as that in No. 46, should be affirmed.

MR. JUSTICE BURTON concurs in Part I of this opinion.

THE CHIEF JUSTICE, MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, MR. JUSTICE CLARK, and MR. JUSTICE BRENNAN concur in Part I of this opinion except insofar as it disapproves of the grant of the writ of certiorari in these cases.