**Ragnvald WILLIAMSON, Plaintiff,**

v.

**ROEN STEAMSHIP COMPANY,**
**Defendant.**

No. 55–C–124.

United States District Court
E. D. Wisconsin.

March 21, 1957.

788

Arlo McKinnon, Milwaukee, Wis., for plaintiff.

Tom Yates, Chicago, Ill., Emmet Horan, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This action was brought under the Jones Act, 46 U.S.C.A. § 688 to recover damages for injuries sustained by the plaintiff on or about June 4, 1953 when he fell through a deck on the Barge Maitland. The deck had rotted. Defendant's counsel moved for a directed verdict under Rule 50, Fed.Rules Civ.Proc., 28 U.S.C.A. That motion was denied. The court submitted the matter to a jury on special verdict. The jury found causal negligence on the part of the defendant with reference to failing to maintain the middle deck of Hold 5 in a seaworthy condition. It found causal negligence on the part of the plaintiff in failing to notify the defendant of the condition of the barge and with respect to keeping the barge in repair. It attributed 25% of the causal negligence to the plaintiff and 75% to the defendant and found damages in the sum of $20,000. Pursuant to Rule 58, the court directed the clerk to enter judgment in favor of the plaintiff and against the defendant in the sum of $15,-000 damages and costs. Defendant has made various motions, renewing the motion for directed verdict and including a motion for a new trial.

Defendant contends that because plaintiff was the Master of the barge, it was his duty to see that it was kept seaworthy and that his injuries were solely the result of his own negligence. The evidence shows that while the barge was in navigation, approximately from April to December of each year, the plaintiff was its Master. From December to April the barge was kept in defendant's shipyards at Sturgeon Bay and during that period the maintenance was done on the barge. The evidence does not show that plaintiff was solely in charge of maintenance during the nonnavigation season. The barge was very large. The evidence is undisputed that the deck that plaintiff fell through was rotten. The jury might well have considered that this is something that would not likely have occurred between the beginning of the navigation season in April 1953 and June 4, 1953.

There is authority for the holding that the Master of a barge in charge of maintenance is in a different position than the ordinary seaman with reference to something that happens during the voyage, which it is his duty to repair and make safe. There is no evidence here to show, and one would be most reluctant to believe, that the deck in question was seaworthy in April 1953 when the navigation season started. The court is of the opinion that there is evidence upon which a jury could, as it did, find causal negligence on the part of both plaintiff and defendant. The apportionment of negligence is for the jury under the Act. The court does not feel that it could or should substitute its judgment for the determination of the jury on the questions of liability in this case. Ferguson v. Moore-McCormack Lines, Inc., 77 S.Ct. 457.

Defendant complains about some testimony given by Dr. Muehlhauser, a witness called by the plaintiff, with reference to insurance and with reference to the plaintiff's case being a "special" case. During the cross-examination of Dr. Muehlhauser, defendant's counsel noticed that he had been using two small cards to refresh his recollection. Defendant's counsel cross-examined him in some considerable detail concerning the meagerness of these records. Dr. Muehlhauser testified that he saw a large number of patients each day. There were very few entries on these cards to susbtantiate the detailed testimony he gave in this

case. It was, no doubt, the purpose of defendant's counsel to cast doubt upon the doctor's memory or credibility. The doctor went into such great detail. Considering the large practice that the doctor testified to, counsel, no doubt, felt that the jury might well question this testimony under these circumstances.

On redirect examination, plaintiff's counsel sought to explain why so few notes were kept. It was during the course of this redirect examination that Dr. Muehlhauser, in explaining the meagerness of his records, brought out that this was a "special" case; that he did not realize at the time that it was an industrial case and volunteered that he kept detailed notes to make reports to insurance companies in industrial cases.

■ The court felt that plaintiff's counsel had the right to bring out on the redirect examination any reason or explanation for the doctor's records being so meagre in this case. It is unfortunate that the doctor, himself, brought in the question of insurance. At the request of defendant's counsel, the court admonished the jury to disregard any mention of insurance and pointed out that there was no insurance company in the case. It is the belief of the court that this mention of insurance was spontaneous on the part of the doctor in explanation for his meagre notes, and that such harm as may have been done by its having been mentioned was probably overcome by the instructions given by the court on that subject.

■ Defendant's counsel complained, and no doubt rightly, about the repetitiousness of plaintiff's counsel in questioning the doctors who testified and thus reiterating, emphasizing and, as defendant's counsel claims, "building up" damages. The court repeatedly admonished plaintiff's counsel to avoid unnecessary repetition. The court feels that plaintiff's counsel is subject to criticism for his persistence in those tactics. The court does not feel defendant was prejudiced enough so that a new trial should be granted for that misconduct.

Defendant's counsel contend that the damages awarded are so excessive as to indicate perverseness on the part of the jury. The award of $20,000 damages on the evidence of this case presents a troublesome question. Plaintiff sustained painful injuries, a number of broken ribs and a fracture of the transverse process of a vertebrae. The evidence shows that all of these fractures healed without any malalignment or anything in the nature of permanent injury of the bone structures. Plaintiff was suffering osteoarthritis prior to this fall. Plaintiff claims that the injuries accelerated this process and made it more painful. Plaintiff put in medical testimony to the effect that he sustained a concussion and was suffering from post concussional residuals. Plaintiff's medical witnesses largely based opinions upon the symptoms of which plaintiff complained, and considering the height of the fall and the way in which plaintiff landed, testified to opinions that he had a "whiplash" injury to his neck. Defendant complains of this testimony on the basis that it was speculation and particularly that two of plaintiff's doctors indulged in their own speculation and then on the basis of that speculation testified to opinions about tissue damage and permanent injuries. Defendant's counsel also point out that through the year 1956, plaintiff put in an average of twenty-five hours per week overtime, that he did hard work, and urge that he could not have been in very bad shape physically.

With reference to the assumption of a "whiplash" injury, the court believes that there are injuries which could not be established by eye-witnesses but which doctors can diagnose because of the symptoms and findings.

The question is not how the medical testimony impressed the court or what the court would have found in that respect. The question is: Is there any evidence which, *if* believed by a jury, would

sustain the finding and award of damages here granted?

■ There was a paucity of early symptoms which one might normally expect to find in the event of any serious concussion. The objective neurological findings were extremely meagre. The complaints which are attributed to such alleged condition by plaintiff's doctors were very late in coming on. No such findings were made at the hospitals where plaintiff was hospitalized. The treatment given this plaintiff would not indicate that the doctors felt that there was any real serious condition other than a temporary condition from the fractures. But the jury had a right to believe the testimony of Drs. Schaeffer and Salinsky. It was for the jury to choose as between the testimony of Drs. Schaeffer and Salinsky on the one hand, and Drs. Maxwell and Johnson on the other. Had it been a matter for the court to determine, the court would have had great doubt about the testimony of Drs. Schaeffer and Salinsky, based, as it was, so heavily on subjective findings and complaints and considering the paucity of objective physical findings, the findings in the hospitals to which plaintiff was confined immediately following his injury and thereafter during the summer of 1953. The credibility of witnesses and the weight to be given to their testimony is for the jury.

■ The damages found were exceedingly high considering there was no wage loss, no medical expense and that there was no testimony on which a jury could find that there would be any future wage loss. The court is not prepared to say that the award goes so far beyond what was justified, assuming the jury believed the testimony of Drs. Schaeffer and Salinsky, that the court feels impelled to either grant a new trial or give plaintiff the option of taking a smaller amount of damages or a new trial. For the foregoing reasons defendant's motions are denied.