HOOD, Judge.
This is an action for damages for personal injuries sustained by plaintiff as the result of a motor vehicle collision. It was instituted by Charles Wayne Sonnier against Edward Gatson, Jr., and his insurer, Hardware Mutual Casualty Company. The case was tried by jury, with the result that a special verdict was rendered finding, in effect, that defendant Gatson was negligent, that Sonnier was free from contributory negligence, and that plaintiff sustained damages in the amount of $7,800.00. Judgment was rendered by the trial court in favor of plaintiff, awarding him the sum set out in the verdict. Defendants have appealed.
The issues presented here are: (1) Was Gatson negligent? (2) Is plaintiff barred from recovery by his own contributory negligence? and (3) Is the award made by the trial court excessive ?
*901 The accident occurred about 4:30 p. m. on June 13, 1969, on U. S. Highway 90 about two miles east of the City of Lake Charles. The highway at that point is a two-lane, hard-surfaced, straight, level, heavily-traveled thoroughfare. The posted speed limit on the highway there was 60 miles per hour. Several business establishments were located on both sides of the highway in that area.
Immediately before the collision occurred defendant Gatson was driving a flatbed, stake-bodied, two-ton truck east on the highway. The truck was owned by Gat-son’s employer, the Dixie Warehouse, and it was insured by defendant Hardware Mutual. It was loaded with 27 drums of chemicals, each of which weighed 402 pounds. As Gatson approached a warehouse owned by his employer and located on the north side of the highway, he caused his truck to make a left turn, his purpose being to enter a private driveway leading from the highway to his employer’s warehouse. As he was negotiating this left turn, the left side of his truck was struck by an automobile which was being driven east by plaintiff Sonnier.
At least three other vehicles, all traveling east, were lined up on the highway behind Gatson shortly before he started his left turn. An unidentified red automobile was following immediately behind Gatson. A van-type truck, owned by Dixie Warehouse and being driven by a fellow employee of Gatson, was behind the automobile. And plaintiff, Sonnier, was driving his automobile behind the van truck. Shortly before Gatson reached the above-described private driveway, Sonnier pulled to his left, into the west-bound or passing lane of traffic, and he safely overtook and passed the van truck and the red automobile ahead of him. The evidence shows, however, that before reaching the private driveway, Sonnier applied his brakes forcefully, causing his car to turn further to his left and to skid sideways in a northeasterly direction before the collision occurred. He left skid marks 132 feet long leading up to the point of impact. The right front part of the Sonnier automobile struck the left rear double wheels of the Gatson truck at a point on the north shoulder of the highway, where the Dixie Warehouse private driveway joins that highway.
The evidence shows that James Allen Vige, the driver of the van truck which was following Gatson, also intended to make a left turn into the private driveway, and that the Gatson truck and the line of vehicles following it had slowed down to a speed of not more than 20 miles per hour before the left turn was commenced. Gat-son reduced his speed further as he made the turn, and was traveling only five to ten miles per hour when the collision occurred. Sonnier was driving at a speed of between 45 and 55 miles per hour when he first observed that Gatson was going to turn to his left. Sonnier’s speed, of course, was well within the maximum speed limit in that area.
Gatson testified that he looked in his rearview miror some distance before he reached the private driveway, and that he looked again just before he began his turn. He stated that he saw no vehicles in the passing lane of traffic on either of those occasions, and that he concluded that it was safe for him to turn. He said he turned on his left turn signal light when he reached a point about 100 feet from the driveway, that at about the same time he extended his left arm indicating that he intended to make a left turn, and that the first notice he had of the danger was when he heard the Sonnier car skidding while the turn was being negotiated.
Sonnier testified that when he entered the passing lane of traffic there were no vehicles ahead of him in that lane, that he passed the van truck and the red car ahead of him, and that the front of his car had reached a point almost even with the rear wheels of the Gatson truck when that truck began a. gradual left turn. He stated that he immediately applied his brakes and turned his automobile to the left in an ef *902 fort to avoid an accident, but that his car skidded sideways and struck the Gatson truck at a point on the north shoulder of the highway.
The investigating officer determined immediately after the accident occurred that the left hand electric turn signal on the Gatson truck did not operate, although it was not damaged in the collision. Vige, the driver of the following van truck, testified that he did not see an electric turn signal on Gatson’s truck, and the driver of another vehicle which was following Son-nier did not see any such turn signal. We conclude that the electric left turn signal light on the Gatson truck did not operate at the time the collision occurred.
Vige testified that he saw Gatson give a left turn hand signal when he “at the most” was 80 or 90 feet from the driveway, and that Vige turned on the left turn signal light of his van truck when he “at the most” was 125 feet from the driveway. Assuming that the turn signals were given exactly as related by Vige, it is apparent that they were given too late to be effective, since the evidence shows that Sonnier had applied his brakes before any such signal was given by either driver.
A motorist who attempts to make a left turn on a public highway is required to ascertain in advance that the way is clear, and that the turn can be made safely and without endangering overtaking or oncoming traffic. His failure to make such a determination and to exercise the required degree of caution before undertaking to make such a turn constitutes negligence. LSA-R.S. 32:104; Hayes v. Travelers Indemnity Company, 213 So.2d 119 (La.App. 3 Cir. 1968).
In the instant case, we conclude that Sonnier was in the passing lane of traffic, and was engaged in a passing maneuver at the time Gatson began his left turn. Gatson was negligent in failing to see the overtaking automobile, and in failing to ascertain before making his left turn that such a maneuver would be unsafe. We thus find no error in the special verdict of the jury to the effect that defendant Gatson was negligent.
The evidence convinces us that the left turn electric signal light on the Gatson truck did not operate at the time this accident occurred, and that the left turn hand signal given by Gatson was given too late to serve as any effective warning to Son-nier, the overtaking motorist. As already noted, we think Sonnier was engaged in a passing maneuver before Gatson began his left turn and before he gave any signal to the effect that he intended to turn to his left. Under these circumstances we agree with the special verdict of the jury that Sonnier was free from contributory negligence.
The evidence shows that plaintiff incurred medical bills amounting to $1,595.73 for the treatment of his injuries, and that he sustained a loss of wages amounting to $984.00. There is a dispute between the parties as to whether he is entitled to recover additional sums for future medical expenses and for the loss of the use of his automobile after the accident occurred. Assuming, however, that the above-mentioned sums are all of the special damages which were shown, it follows that the jury must have awarded plaintiff $5,220.35 as general damages. Defendants contend that such an award is excessive.
Plaintiff sustained a low back sprain, a neck sprain, and contusions and abrasions of his forehead and left knee, as a result of the accident. The medical treatment which he received included hospitalization for two weeks, from June 3 until June 27, 1969, and conservative treatment over a period of at least seven months. It was necessary for him to wear a neck brace for several months, and to use home traction extensively. His treating orthopedist testified that when he last examined plaintiff on January 23, 1970, plaintiff would continue to suffer pain for three or four more months from that date. *903 Plaintiff was unable to work from the date of the accident until December 5, 1969, a period of approximately six months.
Considering the nature of plaintiff’s injuries, the period of hospitalization which was required, the pain which he suffered and the nature of the treatment which he was compelled to undergo, we have concluded that the award of general damages was within the discretion of the jury and trial court, and we thus will not disturb the award.
For the reasons herein set out, the judgment appealed from is affirmed and the costs of this appeal are assessed to defendants-appellants.
Affirmed.