HOOD, Judge.
Ronald C. Leger instituted this suit for damages for personal injuries sustained by him as the result of a motor vehicle collision. The defendants are Euilie Schexni-der, Vermilion Parish Police Jury, Fireman’s Fund Insurance Company, and Delta ■Exploration Company. Delta, in its answer, prayed that in the event of recovery by plaintiff, the award be apportioned to allow Delta to recover the amounts which it paid to plaintiff as workmen’s compensation benefits.
Judgment was rendered by the trial court in favor of plaintiff, awarding him $4,000.00 as damages, against Schexnider, Vermilion Parish Police Jury and Fireman’s Fund. Plaintiff’s demands against Delta were rejected. Judgment also was rendered in favor of Delta for $3,027.03 against the other defendants. Plaintiff and Delta have appealed, and Schexnider, the Police Jury and Fireman’s Fund have answered the appeal.
A third party petition was filed by Schexnider and Fireman’s Fund against Sanders J. Hargrave, the owner and operator of one of the vehicles which was involved in the collision. The court granted a severance of the trial of this third party action, however, so the issues presented by those pleadings are not before us on this appeal.
One of the questions presented on this appeal is whether Schexnider, the driver of one of the vehicles involved in the collision, was negligent, and if so, whether his negligence was a proximate cause of the accident.
The accident occurred about 7:00 A.M. on July 26, 1967, on Louisiana Highway 35, near Kaplan, Louisiana. The highway at that point is a two-lane, blacktopped, straight, level thoroughfare, and the legal *924 speed limit there was 60 miles per hour. The weather was clear, the road was dry, and visibility was good at the time the accident occurred.
Immediately prior to the time the vehicles collided, Sanders J. Hargrave was driving his automobile south on the above mentioned highway, with plaintiff Leger and Bert Guillot riding as guest passengers in the automobile with him. All three occupants of the Hargrave automobile were employees of defendant, Delta Exploration Company, and they were proceeding to their place of employment on a barge which was situated on navigable waters, near Grand Chenier, Louisiana.
Shortly before reaching the place where the collision occurred, Hargrave was driving in his proper southbound lane of traffic behind two other vehicles, both of which also were traveling south in the same lane of traffic. Hargrave then crossed the center line of the highway and entered the northbound lane of traffic, intending to overtake and pass the two vehicles which were ahead of him. After passing the car immediately in front of him, and as he was approaching the lead vehicle, a pick-up truck, the driver of the truck turned suddenly to his left in order to enter a private driveway. While the pick-up truck was in the process of making this turn, the front of the Hargrave car struck the left rear of the pick-up truck. The collision occurred in the northbound lane of traffic.
The pick-up truck which was involved in the accident was owned by Vermilion Parish Police Jury, and it was being driven by defendant Schexnider, an employee of the Polic Jury. The truck was insured by defendant Fireman’s Fund.
The evidence shows that Hargrave was traveling at a speed of about 35 miles per hour immediately before he began his passing maneuver, and that he increased his speed to about 50 or 55 miles per hour as he went around the vehicle which was immediately ahead of him. He testified that he was about 40 feet behind the pick-up truck when it began its left turn, that he did not see the driver of the truck give any turn signal at all, and that he applied his brakes as soon as he saw that the driver of the truck intended to turn. The Hargrave car left skid marks 102 feet long in the northbound lane of traffic leading up to the point of impact.
Schexnider testified that he was traveling from 10 to 15 miles per hour as he approached the private driveway and began his left turn. He stated that he gave a hand signal, indicating that he was going to make a left turn, when he reached a point 350 feet from the driveway. He conceded, however, that the truck’s outside rearview mirror was broken, that the truck was not equipped with operating turn signal lights, and that he did not see the Har-grave car approaching from the rear in the passing lane of traffic before he began his left turn. One of the guest passengers in the Schexnider truck corroborates the driver’s testimony, but the other passenger testified that he did not see Schexnider give a hand signal at all, but that he did give a blinker signal when the truck was 100 feet from the driveway.
The law is settled that a motorist who attempts to make a left turn on a public highway is required to ascertain in advance that the way is clear, and that the turn can be made safely and without endangering overtaking or oncoming traffic. His failure to make such a determination and to exercise the required degree of caution before undertaking to make such a turn constitutes negligence. LSA-R.S. 32:104; Sonnier v. Hardware Mutual Casualty Company, 242 So.2d 900 (La.App. 3 Cir. 1971); Hayes v. Travelers Indemnity Company, 213 So.2d 119 (La.App. 3 Cir. 1968).
The trial court concluded that the collision “was caused solely by the negligence of Schexnider, the operator of the truck owned by the Police Jury,” and that Har-grave was free from fault. Judgment thus *925 was rendered condemning Schexnider, the Police Jury and Fireman’s Fund to pay damages to plaintiff, but rejecting plaintiff’s claims against Hargrave’s employer, Delta Exploration Company. We agree with the conclusions reached by the trial court.
Plaintiff argues, however, that his demand against Delta is made under the Jones Act, and that in order for him to recover it is necessary only that he show “that Hargrave’s negligence, even the slightest, helped in producing the injury for which damages are sought.” In support of this argument plaintiff cites Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957); Sanford Bros. Boats, Inc. v. Vidrine, 412 F.2d 958 (5 Cir. 1969).
Leger contends that Hargrave was negligent in driving at an excessive rate of speed and in failing to observe Schexni-der’s left turn signal in time to avoid the accident. He takes the position that Har-grave’s negligence in those respects helped to produce the injury for which damages are sought, and that plaintiff thus is entitled to recover against Delta, as the employer of Hargrave and plaintiff, under the Jones Act.
We have carefully considered these arguments and the authorities cited, but have concluded that Hargrave was not chargeable with “even the slightest” negligence, and that plaintiff thus is not entitled to recover under the Jones Act. Since we have found that there can be no recovery under the Jones Act even if that act should be applicable, it is not necessary for us to consider the question of whether plaintiff was employed on a vessel or special purpose craft, or whether the Jones Act applies even though the injury occurred on land.
The next issue presented relates to the amount of the award made to plaintiff as damages for the injuries which he sustained in this accident.
The evidence shows that as a result of the collision plaintiff suffered a laceration of the scalp, and an injury to his back. He was hospitalized for ten days and was treated with bed rest, heat and muscle relaxants, and he was required to wear a back brace periodically for a few weeks after the accident.
Leger also suffered a mild laceration of the stump of his amputated right leg. His right leg had been amputated below the knee when he was four years old, and he used an artificial limb. After the accident occurred, he suffered considerable difficulty with the stump of his right leg, which required hospitalization, surgery and the application of a new prosthetic. The trial judge held, however, that the injury to the stump was caused by an ill-fitting prosthetic and not as a result of any injuries received in the accident. We think the evidence supports that conclusion.
Dr. Marian Joseph Trahan, a general surgeon and one of plaintiff’s treating physicians, testified that he discharged Leger on September 15, 1967, which was less than two months after the accident occurred, and that on that date the latter was “able to return to work,” and was “capable of doing the same work as he did before the accident.” Some of the other doctors who examined plaintiff concluded that he could not return to work by that time, but they based that conclusion solely on the condition of his amputated leg. We have found that the disabling condition of his leg was not caused or aggravated by the accident, and that the pain or disability which he experienced with reference to his leg should not be considered in determining the amount of the award made to him as general damages.
The trial judge awarded plaintiff the sum of $4,000.00 as general damages. That award appears to us to be somewhat generous, but we have decided that it is *926 within the range of the discretion which is vested in the trial court, and we thus will not disturb it.
The trial court also made an award of $2,184.00 as loss of wages and $843.03 as medical expenses, both of which amount to the aggregate sum of $3,027.03.
The award for loss of wages was based on the trial court’s finding that plaintiff was disabled for a period of 24 weeks, and that he lost wages during that period of $91.00 per week. Plaintiff points out that he also received a “living allowance” of $6.00 per day, and he argues that the award for loss of wages should be increased to include that additional amount. The testimony of the treating physician indicates that plaintiff was disabled for about eight weeks, rather than 24 weeks, after the accident occurred. Also, the evidence does not show how many days per week plaintiff received this “living allowance,” and it does not indicate the additional expenses which he may have had to incur during the days when his living allowance was paid. It does show that when he reported for duty on the barge he had to take his own lunch, and that no living quarters were provided for him on the barge. It appears, therefore, that he had to incur some additional expenses for meals and lodging while on duty, and he, of course, did not have those expenses while he was not working.
Considering all of these circumstances, we have concluded that the award made by the trial court for loss of wages is ample and should not be increased.
Finally, a substantial issue is presented as to the amount which should be awarded to Delta as reimbursement of the sums which it paid to plaintiff as workmen’s compensation benefits.
Delta paid the sum of $3,430.00 to plaintiff as weekly compensation benefits, and it paid the additional sum of $2500.00 as medical expenses. It contends that it is entitled to be reimbursed the aggregate of these two sums, or $5,930.00, out of the award which was made to plaintiff in this suit.
The trial court held originally that since Leger had been disabled for a period of only 24 weeks as a result of this accident, the employer was entitled to recover only the compensation which was paid Tor that period of time and the medical expenses which the court attributes to the injuries sustained in that accident. The award made to Delta, however, was for the aggregate sum of $3,024.03, representing all of the wages which plaintiff was found to have lost as a result of his injury from the accident, and the additional sum of $843.03 as medical expenses.
A new trial was granted, and following that trial the court amended its original judgment to award Delta the aggregate sum of $5,930.00 and to award plaintiff $1,097.03. Later, the court again amended its judgment to reduce the award in favor of Delta to the sum of $3,027.03, and to increase the award to plaintiff to $4,000.00. The decree, as finally rendered by the trial court, awards Delta and plaintiff these last mentioned amounts. Delta contends that the judgment should be amended to award it the full amount which it paid to plaintiff as compensation benefits.
Plaintiff contends that since plaintiff was disabled for only 24 weeks following this accident, the trial court correctly held that Delta is entitled to recover only the compensation benefits which it paid for that period of time.
The trial court relied on the case of Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969) in concluding that Delta is entitled to recover only the compensation benefits paid by it covering the period of plaintiff’s disability which was attributable to the accident. We distinguish the Tripoli case, and have concluded that the trial court erred in applying it here.
In Tripoli, two separate incidents occurred which resulted in injuries to plaintiff. Compensation benefits were paid *927 based on the injury and disability sustained by plaintiff in the first incident. Plaintiff, however, recovered in. tort only on the cause of action which was based on the second incident. Our Supreme Court held that the compensation insurer could not recover the benefits which it had paid to plaintiff because of the injuries he sustained in the first accident for which no damages were recovered.
In the instant suit, only one accident occurred, and compensation benefits were paid by Delta based on the injuries which plaintiff allegedly sustained as a result of that accident. It is true that Delta paid more compensation than was actually due, but it nevertheless made the payments on the assumption that plaintiff’s disability resulted from a work-connected accident, and plaintiff received the aggregate sum of $5,930.00 as compensation benefits from Delta.
LSA-R.S. 23:1103 provides that in the event the employer becomes a party plaintiff in a suit against a third person and damages are recovered, such damage shall be so apportioned in the judgment that the claim of the employer “for the compensation actually paid" shall take precedence over that of the injured employee.
We have concluded that Delta is entitled to recover the full amount which it paid to plaintiff as weekly compensation benefits in this case. The trial judge thus erred in limiting Delta to recover the amount paid for a 24 week period.
Plaintiff argues further that Delta is not entitled to recover for the medical expenses paid by it, because plaintiff did not include medical expenses as an item of damage claimed by him in this suit. We find no merit to that argument. Although plaintiff did not list medical expenses as one of the items of damage claimed, evidence as to medical expenses was admitted without objection and a stipulation was entered into as to the amount of those expenses. The pleadings thus were enlarged to include them. The court included an award of $843.03 as medical expenses.
The effect of the judgment rendered by the trial court was to award plaintiff damages in the aggregate sum of $7,027.03, of which amount $3,027.03 was to be paid to Delta, and the remaining $4,000.00 was to be paid to plaintiff. We have concluded that the aggregate amount awarded to plaintiff should be affirmed, but that out of that sum Delta should be paid by preference the sum of $5,930.00, and plaintiff should be paid the remaining balance amounting to $1,097.03.
For the reasons herein assigned, the judgment appealed from is amended by decreasing the award made to plaintiff from $4,000.00 to the sum of $1,097.03, and by increasing the award made to Delta Exploration Company from $3,027.03 to the sum of $5,930.00. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Amended and affirmed.