PICKETT, Judge.
This is a tort action which arose out of a collision between a 1962 Volkswagon owned and operated by plaintiff, Susan Worley, and a 1968 Chevrolet automobile owned by Diamond M Drilling Company, and driven by Martin J. Heinen, Jr., an employee. The accident occurred at about 10:15 P.M. on June 3, 1971, at the intersection of a private road known as Guarisco Road and U. S. Highway 90. The defendants are Martin J. Heinen, Jr., Diamond M Drilling Company, and its public liability insurer, Argonaut Insurance Company. The defendants have appealed from a judgment awarding the plaintiff total damages of $19,797.61.
The evidence shows that the Volkswagon owned and driven by the plaintiff, Susan Worley, was proceeding easterly on U. S. Highway 90 and while engaged in making a left hand turn from U. S. Highway 90 into Guarisco Road was struck on the left side by the vehicle driven by Martin J. Hei-nen, Jr.
The plaintiff testified that after she crossed the Bayou Ramos Bridge, she slowed her speed to approximately twenty miles per hour and began looking for the Guarisco Road into which she intended to turn. She located the Guarisco Road, and when she was about 200 feet from it she looked in her rear view mirror, and observed a vehicle following her, which car was referred to by the district judge as Car X, for the reason the driver was unknown. At that point, the appellee activated her left turn signal, and proceeded at about the same rate of speed with her left turn signal blinking, until she reached a point almost opposite the Guarisco Road, when she again looked in her rear view mirror. She observed no one approaching except Car X. She then looked to her left and front, and finding the way clear she began turning at an angle to the left across the west bound traffic lane. Appellee testified that about the time her front tires reached the shell shoulder on the North side of the High *303 way, she was violently struck by another vehicle which she had not seen. Mrs. Worley was rendered unconscious as a result of the collision.
The defendant Martin J. Heinen, Jr., testified that at the time of the accident he was the off-shore drilling superintendent of the Diamond M Drilling Company, and as such he was subject to twenty-four hours call. The automobile that he was driving was equipped with a telephone so that he could be in constant touch with the home office, his employer and any of the drilling rigs that might require his attention. We deem his recitation of his activities for several hours preceding the collision to be of some significance. Mr. Hei-nen said he arrived at his office about 5 :00 o’clock in the morning and worked until noon. He went to the Petroleum Club for lunch; and thereafter, he played golf until 6:30 or 7:00 P.M. on the St. Mary Golf course, during which time he drank three cans of beer. Mr. Heinen said that he returned to his office and worked until about 9:00 P.M. Thereafter, he stopped at the Marine Rental Tools and discussed some company business, and had two mixed drinks. He left the office of Rental Tools about 10:00 P.M. to go to his home in Amelia, Louisiana, which was about eight miles away, and he was involved in the collision on his way home. Mr. Heinen said he saw Car X traveling in front of him when he reached the crest of the Bayou Ramos Bridge, but that he did not see the Worley vehicle. He testified that he was traveling easterly at a speed of about sixty miles per hour and when he reached a point about four car lengths behind Car X he commenced a passing maneuver by pulling into the left lane, at which time he probably increased his speed. Almost immediately after he turned into the passing lane he saw the Worley vehicle for the first time, at about a 45 degree angle across the west bound lane right in front of him. At that time Car X was to his right, and he could not turn, back into the east bound lane. Mr. Heinen said he locked his brakes, but that he was traveling too fast to avoid colliding with the Volks-wagon, and his vehicle struck the left rear portion of the Worley vehicle and scraped along the left side and ended up crushing in the left front of the Volkswagon.
Trooper Ray Quebedeaux investigated the accident. He testified that he was called to- the scene of the accident shortly after it occurred. When he arrived at the scene of the accident he found that both vehicles involved had traveled in an easterly direction a distance of ninety feet and two inches, and had come to rest in a ditch which runs along parallel to, and on the north side of, Highway 90. The Volkswa-gon was facing west, and the Chevrolet was facing north. The right front fender of the Chevrolet was in the left front fender of the Volkswagon. Trooper Que-bedeaux found debris which indicated the point of impact was, about midway of the west bound lane near the entrance of the Guarisco Road. His investigation disclosed no skid marks in the west bound lane, but he did find some tire tracks on the north shoulder of the Highway. Trooper Quebe-deaux testified further that he detected the odor of alcohol on Mr. Heinen’s breath when he interviewed him at the scene of the accident. Some two hours later he gave Mr. Heinen a Breathometer test, which showed .06 grams per centimenter. The Trooper was unable to interview Mrs. Worley because of her condition resulting from her injuries sustained in the accident.
Mr. Heinen made a statement in the presence of Officer H. E. Beaver at the Morgan City Police Station on the night of the accident to the effect that at the time of the accident and immediately prior thereto, he was talking over his mobile car radio. Mrs. Worley’s mother and grandmother testified that Mr. Heinen made substantially the same statement in their presence at the hospital where Mrs. Wor-ley was taken for treatment. On the trial of the case, Mr. Heinen admitted that he made the statements, but he had concluded he was not talking on the telephone at the *304 time of the accident. The trial judge in his written reason for judgment, commented on Mr. Heinen’s repudiation of his former statements, as follows:
“Mr. Heinen admitted making these statements to the persons named but at the trial he stated that upon reflection he had later decided that he could not have been talking on his mobile radio at the time because he remembered that following the accident his speaker phone was in place in it’s rack and that if he had had but one hand on his sterring wheel he would have received an injury and actually was unhurt. Although I have no reason .to believe that Mr. Heinen would deliberately contradict this prior admission against interest without his being first convinced of its inaccuracy, his testimony being otherwise most honest and candid, I must conclude that this statement made by him immediately following the accident correctly sets forth his actions immediately before and at the time of the collision.”
The duty of a motorist who attempts a left turn is well expressed by the Court in Sonnier v. Hardware Mutual Casualty et al., La.App., 242 So.2d 900, as follows:
“A motorist who attempts to make a left turn on a public highway is required to ascertain in advance that the way is clear, and that the turn can be made safely and without endangering overtaking or oncoming traffic. His failure to make such a determination and to exercise the required degree of caution before undertaking to make such a turn constitutes negligence. LSA-R.S. 32:104; Hayes v. Travelers Indemnity Company, 213 So.2d 119 (La.App. 3 Cir. 1968).”
However, in Dorty v. Zurich Insurance Company, La.App., 236 So.2d 837, the Court pointed out that the above cited general rule is subject to exceptions and said:
“However, there is no assumption that the driver of a vehicle who undertakes a left turn is per se or ipso facto guilty of negligence. Breland v. American Insurance Company, 163 So.2d 583 (La.App.2d Cir. 1964 — writ refused) Faulkner v. Ryder Tank Lines, Inc., La.App., 135 So.2d 494; . . .”, and other cases therein cited.
The general rule applicable to the duty of a left turning driver, and the exceptions thereto is very appropriately observed in Pagett v. Travelers Indemnity Company, La.App., 99 So.2d 173:
“The general principle, as enunciated and emphasized in the cases cited, that a left-hand turn is a most dangerous operation and is not to be undertaken until a driver ascertains that it can be performed in safety, is now so well established and so firmly imbedded in our jurisprudence as to admit neither question nor argument. But it must be borne in mind that every general rule is subject either to exception or to modification in the light of the facts of a particular case. We very much fear that our courts may have been guilty of some overemphasis in the establishment and reiteration of this rule, which has resulted in the assumption that the driver of a vehicle who undertakes a left-hand turn is guilty of negligence, per se, in the event an accident occurs. Certainly, this result was never intended. Under the facts which we consider to have been well established in the instant case, if it should be held that the driver of the Smedley car was guilty of negligence, it would be difficult to imagine an instance in which a left-hand turn could be made without an imputation of negligence.”
In the Pagett case, supra, the Court properly observed that the facts found, and the conclusions reached in Sumrall v. Myles, La.App., 51 So.2d 411, by the First Circuit were applicable to a consideration of the Pagett case.
 After an examination of the evidence, we are convinced that the trial court correctly evaluated, and lucidly set *305 forth the facts that disclose the neglience of Mr. Heinen, and the lack of negligence of Mrs. Worley, as follows:
“I have carefully considered all of the evidence presented and conclude that the accident giving rise to this litigation was caused solely and proximately by the negligence of the defendant, Martin Hei-nen Jr. in attempting a sharp passing maneuver while traveling at a speed of 60 miles per hour without proper lookout while inattentive, and with disregard of the danger ahead of him. Mr. Heinen’s inattention and lack of care is apparent when one considers that just prior to and at the time of the accident he was engaged in the operation of his mobile radio. Mr. Heinen himself attached a great deal of significance to this fact as bearing upon the issue of causation in that he felt compelled to make this damaging admission to an officer at the scene of the accident and then to the relatives of the injured plaintiff at the hospital. Additionally, one cannot lose sight of the fact that Mr. Heinen failed to see the plaintiff’s car traveling to the front of Car X when he reached the crest of the Bayou Ramos bridge. It is certainly reasonable to conclude that if Mr. Hei-nen had been proceeding with care and maintaining a proper lookout he could have and certainly should have seen plaintiff’s vehicle from that vantage point.
“Mrs. Worley on the other hand took every reasonable precaution. She made close observation of approaching traffic, noted the lack of oncoming traffic, checked with the location and speed of the only car seen following her (Car X), gave proper and timely left turn signals, tnd ascertained that her signals were heeded by the driver of the only car in view to her rear. It was only then that she began to carefully negotiate the turn to the left into the intersecting road. Her failure to see the Heinen vehicle is answered by the evidence. The Heinen vehicle traveling to the rear of Car X was not susceptible of observation until it began it’s sharp passing maneuver and at that point in time the Worley vehicle was well engaged in its left-turn movement.”
We are also in accord with the finding of the trial court that at the time of the occurrence of the accident sued upon, the defendant, Martin J. Heinen, Jr., was an employee of Diamond M. Drilling Company, and that he was acting within the course and scope of his employment, thus subjecting his employer to solidary liability for his negligent act. It was stipulated at the trial that the Argonaut Insurance Company was the liability insurer of the vehicle being driven by Mr. Heinen; and, therefore, is liable in solido with Mr. Hei-nen and his employer.
Having reviewed the evidence relating to the nature and extent of Mrs. Worley’s injuries, we concur in the summary and evaluation thereof by the trial court as set forth in his written reasons for judgment as follows:
“Immediately following the accident plaintiff was rushed to Lakewood Hospital in Morgan City where she received emergency treatment from Dr. Whitley who testified that upon her admission she had no discernible pulse or blood pressure. After plaintiff’s condition was stabilized to some degree she was examined and her injuries diagnosed as a multiple pelvic fracture consisting of fractures of both pubic bones, a fracture of the right sacrum and fractures of the vertebrae above the sacrum; a contusion of the left lung; a fracture of the left scapula; fractures of the 6th and 7th ribs; fracture of the distal end of the left radius; and, a laceration of the right leg. Following her hospitalization Mrs. Worley developed a paralysis of the bowels secondary to trauma of the abdomen which further complicated her condition. According to her treating physicians, Drs. Whitley and Blereau, Mrs. Worley remained in critical condi *306 tion for some 11 days and during this period suffered much pain although she was heavily sedated. By the 14th of June Mrs. Worley was ‘out of the woods’ and from that date improved steadily to the end that she was released from the hospital on the 25th of June, some 22 days post accident. Mrs. Wor-ley was treated following her release from the hospital by Dr. Blereau who saw her on only two occasions, July 7th and 19th, on which latter date she was discharged. Plaintiff testified at the time of trial that she had not seen any physician since the latter date for treatment in connection with the injuries received by her in the accident of June 3rd, but did see Dr. Gilly on two occas-sions for evaluation at the request of her attorney.”
The plaintiff undoubtedly suffered excruciating pain as a result of her injuries, and because of her critical condition suffered great mental anguish. For many days, after she regained consciousness, she feared that she would not survive. Dr. Thomas E. Tate, an Eye, Ear and Nose specialist, testified that plaintiff has suffered a permanent paralysis of her left vocal chord. She has suffered some slight loss of motion in her left wrist, and discomfort in her left hip after long periods of sitting.
The record amply supports the award of $16,000.00 by the district judge for pain and suffering and permanent disability. The parties stipulated that Mrs. Worley had incurred medical and hospital expenses in the sum of $3,297.61. It was further stipulated that the Volkswagon, which was a total loss, had a value of $500.00. The total award of $19,797.61 is, in our opinion, neither excessive nor inadequate.
For the reasons herein set out, the judgment appealed from is affirmed and the costs of this appeal are assessed to defendants-appellants.
Affirmed.