William T. WRIGHT, Plaintiff–
Appellee,

v.

MAERSK LINE, LTD., Defendant–
Appellant.

No. 03–7476.

United States Court of Appeals,
Second Circuit.

Dec. 31, 2003.

Todd P. Kenyon, New York, N.Y., for
Appellant.

Florrie L. Wertheimer, New York, N.Y.,
for Appellee.

Present: MESKILL, POOLER, and
SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF,
IT IS HEREBY ORDERED, AD-
JUDGED, AND DECREED** that the
judgment be **AFFIRMED.**

On December 22, 1997, during a voyage
from the island of Diego Garcia in the
Indian Ocean to Roosevelt Roads, Puerto
Rico, Wright, an electrician on board the
PFC James Anderson, Jr. (the "Ship"), fell
ill sometime after the Ship passed Cape

Town, South Africa. Wright reported his illness four days later when he "turned yellow." The captain of the Ship, Captain Phillips, contacted the Medical Advisory Systems ("MAS"), a service staffed with medical doctors providing ships at sea with advice on treating sick crew members, and spoke directly with Dr. Hasan Babaturk. The parties dispute whether MAS advised Captain Phillips to drop Wright off at the island of St. Helena in the South Atlantic Ocean. The other option was to drop Wright off at Ascension Island, which was 707 nautical miles away and would take an additional 41 hours to reach. The problem with dropping Wright off at St. Helena was that St. Helena had no airport and is serviced by a mail boat which arrives every 28 or so days. On the other hand, Ascension Island had a hospital, an airport, and the U.S. Air Force visited the military bases there weekly. Thus, Wright could have more easily returned to the United States. Information about the respective islands was known or available to Captain Phillips when the Ship dropped Wright off at St. Helena on December 29, 1997.

On arrival, Wright was examined by two doctors, and an ultrasound examination of his abdomen and blood tests were taken. Wright was told that the ultrasound revealed no gallstones and that he probably passed a gallstone. Wright remained hospitalized for five days. Wright, however, could not leave St. Helena until January 24, 1998, the earliest time that a ship could take him to Ascension Island. He was finally able to fly home from Ascension Island to Newark via Antigua on February 2, 1998. When Wright returned to the United States, his blood tests were abnormal and a sonogram revealed that he had one or two gallstones in his gallbladder and sludge. Wright's medical expert, his treating physician, testified that he discovered gallstones in his gallbladder and that his gallbladder was inflamed and thickened. He also testified that Wright most likely had these stones while on St. Helena, but they were not discovered. He opined that the delay in Wright's return to the United States had a negative effect on his physical condition, specifically by causing significant damage to his liver.

On January 17, 2003, the jury rendered a verdict in favor of Wright, awarding him $995,000. However, they also found him to be 50% negligent, which limited his recovery to $497,500. After reducing this sum to reflect the present value of Wright's future lost earnings and future pain and suffering, the district court entered judgment in the amount of $421,935. Maersk moved for a judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(b), or, in the alternative, for a new trial pursuant to Rule 59. The district court found that the "evidence sufficiently supported the verdict," and denied Maersk's motions.

On appeal, Maersk contends that the jury's verdict was not based on a legally sufficient evidentiary basis, and that the district court erred in denying its motion for judgment as a matter of law. This Court reviews "de novo the grant or denial of a motion for judgment as a matter of law under Rule 50." *Wolf v. Yamin*, 295 F.3d 303, 308 (2d Cir.2002). As a general matter, "judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." *Williams v. County of Westchester*, 171 F.3d 98, 101 (2d Cir. 1999). "In ruling on a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of the evidence; rather, it must defer to the credibility assessments that may have been made by the jury and

the reasonable factual inferences that may be drawn by the jury." *Id.*

It is well settled that, in order to prevail on a Jones Act claim, a plaintiff need only demonstrate that employer negligence played a slight part in the plaintiff's injury. *See Ferguson v. Moore–McCormack Lines, Inc.,* 352 U.S. 521, 523, 1 L.Ed.2d 511 (1957); *accord DeLima v. Trinidad Corp.,* 302 F.2d 585, 587–88 (2d Cir.1962). Although a vessel owner has a duty to provide proper medical treatment to an ill seaman, *The Iroquois,* 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955 (1904), whether that duty has been fulfilled is a fact-specific inquiry that depends on "the circumstances of each case." *De Zon v. American President Lines,* 318 U.S. 660, 667, 63 S.Ct. 814, 87 L.Ed. 1065 (1943).

Maersk argued below and continues to argue on appeal that *The Iroquois* stands for the proposition that a vessel at sea fulfills its duty to an injured or ill seaman by pulling into the nearest port that is known to have adequate medical facilities. Thus, when the Ship promptly dropped Wright off at the nearest port to receive medical treatment, Maersk fulfilled its duty to Wright—it was not obligated to determine whether Wright would also be able to return home expeditiously. The District Court correctly rejected this limited reading of *The Iroquois.* Although the Supreme Court held that the vessel owner was negligent for failing to put the injured seaman off at the nearest port when the seaman was injured, *id.* at 247–48, it also stated that "[w]e cannot say that in every instance where a serious accident occurs the master is bound to disregard every other consideration and put into the nearest port[.]" *Id.* at 242. The "nearest port" consideration is not the sole and determinative factor, other factors should also be considered in ascertaining whether Captain Phillips acted reasonably in responding to Wright's illness. Thus, it was proper for the jury to consider Wright's ability to return home as a factor in considering Maersk's negligence.

Here, the evidence sufficiently supported the jury's finding that Maersk negligently responded to Wright's illness. First, Wright's expert, Captain Ahlstrom, testified that a prudent captain would have dropped Wright off at Ascension Island, even though Ascension Island was two days away. He concluded that dropping Wright off in St. Helena was not a "good decision." He also testified that, among the factors that a prudent captain would consider in determining whether to put a crewman ashore is not only how quickly the crewman could receive adequate medical care but also how quickly he can be repatriated home to the United States to see a doctor.

Second, Captain Phillips' explanation for dropping off Wright immediately rather than waiting an additional 2 days was that Wright's condition was a medical emergency. This explanation, however, is belied by the fact that on December 28, 1997, Captain Phillips informed Dr. Babaturk at MAS that Wright had eaten, had good vital signs and had a normal temperature. On December 29th, Captain Phillips reported that Wright landed at St. Helena's in good spirits and with normal vital signs. Further, Maersk's claim that it acted reasonably because their decision to drop off Wright on St. Helena was made pursuant to advice from MAS is undermined by Captain Ahlstrom's testimony that his review of MAS records indicates that MAS did not give such advice to Maersk.

Accordingly, because the evidence submitted at trial was sufficient to permit a reasonable juror to find in Wright's favor, the judgment is hereby AFFIRMED.